**MUKLUK FREIGHT LINES, INC.,**
Appellant,

v.

**NABORS ALASKA DRILLING, INC.,**
et al., Appellees.

No. 1870.

Supreme Court of Alaska.

Dec. 3, 1973.

---

Joseph W. Sheehan, of Rice, Hoppner, Blair & Associates, Fairbanks, for appellant.

Bruce A. Bookman, of McGrath, Wohlforth & Flint, Anchorage, for appellee Nabors Drilling.

John E. Havelock, Atty. Gen., Juneau, Anthony D. M. Doyle, Asst. Atty. Gen., Anchorage, for appellee, State of Alaska.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER, and FITZGERALD, JJ.

## OPINION

FITZGERALD, Justice.

Nabors Alaska Drilling, Inc.,[1] acquired through purchase all of the stock of Kodiak Oilfield Haulers, Inc.[2] Following the purchase, Nabors filed an application pursuant to AS 42.10.220[3] with the Alaska Transportation Commission[4] for transfer of Kodiak's operating authority to Nabors. Mukluk Freight Lines, Inc.,[5] objected to the application[6] contending that Kodiak's operating authority was dormant, and that the Commission was required to consider public necessity before approving a transfer of the operating authority. Mukluk also challenged Nabors' ability to provide adequate service under Kodiak's operating authority.

The Commission conducted two prehearing conferences. Initially, the Commission

1. Hereinafter referred to as Nabors.

2. Hereinafter referred to as Kodiak.

3. AS 42.10.220 provides in part:
   "(a) Transfer of a permit will be permitted upon compliance with the rules of the commission. Commission approval, if in the public interest, is required in any of the following instances: . . .
   4) acquistion by one or more persons of a controlling interest in a carriers firm, by purchase, by acquisition of stock, or by any other means.
   (b) Only those rights which are shown to have been in active and regular use may be transferred. The transferor shall certify to the commission that the authority contained in the permit has been in reasonably continuous and active use as to the territory or routes authorized to be served and as to the various services authorized to be rendered by the carrier. The commission may require documentary evidence in support of the transfer of the permit. Dormant operating rights of the transferor may not be transferred unless the commission finds that the service is needed for the public convenience and necessity, and that the transferee will provide such service."

4. Hereinafter referred to as Commission.

5. Hereinafter referred to as Mukluk.

6. In addition to Mukluk several other parties filed opposition to the application. The other parties are not involved in this appeal.

intended to hold an evidentiary hearing in the matter. The contestants were ordered to file written submissions [7] on the evidence which each intended to present. Nabors complied fully with the Commission's prehearing order, but Mukluk's submission consisted of a verified statement by James G. Dye, its president, with an outline of Mukluk's objections. Dye, in urging the Commission to deny the application, alleged Nabors had failed to prove nondormancy. According to the statement, the proposed transfer was incompatible with the public interest since there was insufficient freight to warrant additional transportation service. Mukluk also demanded a right to cross-examine all of Nabors' witnesses at the hearing.

In light of Mukluk's failure to file a submission complying with the Commission's prehearing order, Nabors requested that all issues before the Commission be resolved by consideration of the written submissions avoiding the necessity of an evidentiary hearing. Since Mukluk had failed to submit evidence on the issue of dormancy after having the opportunity to review Nabors' written submissions, Nabors now claimed that essential fairness required final adjudication of the issues on the basis of the submissions without further hearings.

The Commission responded to Nabors' suggestion by promulgating Order 71–807, dated November 12, 1971. The order cancelled the evidentiary hearing and limited the inquiry of the Commission to an evaluation of written submissions. According to the order, the Commission, in the exercise of its discretion, had determined that in this instance public interest did not require an evidentiary hearing. In effect the order prevented Mukluk from cross-examining Nabors' witnesses in the search for

flaws or weaknesses in Nabors' evidence. The Commission recited the factors which it considered in reaching its decision that the evidentiary hearing was unnecessary. They included the nature of Nabors' acquisition of control of Kodiak, the strength and credibility of Nabors' evidence, Nabors' cooperation in disclosing information to the Commission, and Mukluk's failure to submit contradictory evidence within a reasonable time, even after having access to all of Nabors' evidence.

In the place of an evidentiary hearing, the Commission announced that it would employ a "modified procedure." In the new process Mukluk would be allowed additional time to submit evidence in written form and to take the depositions of Nabors' witnesses if Mukluk so desired. Although the Commission announced a willingness to evaluate any additional requests for reconsideration of its order, Mukluk offered no further submissions or applications. Instead, Mukluk promptly filed an appeal to the superior court.[8] While the appeal was pending in superior court, the Commission approved [9] Nabors' application for transfer of Kodiak's operating authority.

The superior court made its order on the appeal on November 6, 1972. The court approved the Commission's use of a modified procedure, but concluded that Mukluk had been deprived of due process of law in that the Commission had failed in the new procedure to allow Mukluk sufficient time to prepare written submissions. The contestants then entered into a stipulation, approved by the superior court, staying the order of the superior court until an appeal could be taken to this court.

■ Mukluk now appears as appellant and Nabors and the Commission are the

---

7. The Commission referred to the written submissions as "exhibits."

8. AS 44.62.560 provides in relevant part:
   "(a) Judicial review by the superior court of a final administrative order may be had by filing a notice of appeal . . . within 30 days after the last day on which reconsideration can be ordered . . . . The right to appeal is not affected by the failure to seek reconsideration before the agency."

9. By orders dated February 18, 1972 and June 29, 1972.

appellees. The appellant makes the following contentions in this appeal:

"1. The [Commission] has acted beyond the scope of its rules and regulations.

2. The [Commission] has failed to comply with AS 42.07.141 [requirement to adopt regulations].

3. The [Commission] has failed to comply with AS 44.62.180–290 [procedures for adopting regulations].

4. The [Commission] by its decision and order . . . effectively denied Mukluk Freight Lines, Inc. due process of law."

We must first determine if the order of the superior court possesses the finality essential for appellate review.[10] The term "finality" is subject to several definitions.[11] An order by the trial court as a general rule is said to be final if it completely and finally disposes of the contested claims on their merits.[12] Here the order of the superior court disposed of Mukluk's claim for an evidentiary hearing and approved the Commission's proposed use of the procedure. Since the order provided Mukluk with additional time to take depositions of Nabors' witnesses, and to offer evidence in written form, no decision could be made on the merits of the transfer application. Necessarily another decision must follow resolving those issues initially raised by the Nabors' application. Since this is so, we must conclude that the order of the superior court was not a final order.

We have decided, however, that in this case review is proper, since postponement of appellate review until a final judgment is entered by the superior court may "result in injustice because of impairment of a legal right"[13] and since the order "sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court."[14] Accordingly, we choose to regard this appeal as a petition for review.[15]

We now turn to appellant's contentions. The trial court concluded in its order that in a transfer proceedings the Commission had discretionary authority to either grant or deny evidentiary hearings. In reaching its decision the court did not discuss the applicable standard for review of agency determination on this issue. Appellant argues that judicial review of agency decisions on constitutional and statutory issues should be without deference to agency expertise, experience or knowledge.

The degree of deference which the courts will accord to administrative decisions on constitutional and statutory issues requires consideration of a variety of factors. In Kelly v. Zamarello, 486 P.2d 906, 916 (Alaska 1971), this court observed,

"One type involves questions in which the particularized experience and knowledge of the administrative personnel goes into the determination. When this type of question is presented to the court

---

10. Appellate Rule 6 provides in part:
    "An appeal may be taken to this court from a final judgment entered by the superior court or a judge thereof in any action or proceeding, civil ro criminal . . . ."

11. Justice Black has noted "final" in the context of appealability as an "abstruse and infinitely uncertain term." Will v. United States, 389 U.S. 90, 108, 88 S.Ct. 269, 280, 19 L.Ed.2d 305, 318 (1967) (concurring opinion).

12. See Breese v. Smith, 501 P.2d 159, 163 (Alaska 1972) (holding that a memorandum opinion and order which showed the judge's

present intention to "completely and finally dispose of" a complaint for injunctive relief constituted a final judgment within the meaning of former Supreme Court Rule 6); In re Mountain View Public Utility District No. 1, 359 P.2d 951, 954 (Alaska 1961). See generally 9 J. Moore, Federal Practice § 110.08 (2d ed. 1973).

13. Alaska App.R. 23.

14. Alaska App.R. 24.

15. See Jefferson v. Spenard Builder's Supply, Inc., 366 P.2d 714 (Alaska 1961) ; Stokes v. Van Seventer, 355 P.2d 594 (Alaska 1960).

for review, deference should be given to the administrative interpretation, since the expertise of the agency would be of material assistance to the court. . . .

The other kind of case presents questions of law in which knowledge and experience in the industry affords little guidance toward a proper consideration of the legal issues. These cases usually concern statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience. Consequently, courts are at least as capable of deciding this kind of question as an administrative agency. . . .

.   .   .   .   .   .

.   .   .   .   .   .

Application of the reasonable basis test is extremely useful where the administrative action under review resembles executive as opposed to legislative or judicial activity. . . .

The reasonable basis approach, in the review of agency action which is essentially executive in character, recognizes that the application of law to facts in an administrative setting may require techniques quite different from those traditionally associated with judicial functions. . . . On the other hand, where the agency's decision was not one within its ambit of specialized knowledge, the [U. S. Supreme] Court has applied a much broader standard of review and has in these cases substituted its own judgment on the law. *We believe that the reasonable basis approach should be used for the most part in cases concerning administrative expertise as to either complex subject matter or fundamental policy formulations."* [16]

Professor Davis suggests one other important factor, in addition to a number of rather nebulous background considerations,[17] which guides judicial discretion regarding substitution of its judgment of agency determinations.

"[F]ar the most important is the *comparative qualification of court and agency to decide the particular issue.* Courts are the experts in such areas as constitutional law, common law, ethics, overall philosophy of law and government, judgemade law developed through statutory interpretation, most analysis of legislative history, and problems transcending the agency's field [of specialization.]" [18]

The controlling factors in this case weigh heavily against application of the reasonable basis test to the issues now under consideration. Those issues appear to have little to do with the Commission's expertise or particularized knowledge. Instead they concern constitutional and statutory interpretations requiring the special competency of the courts.

Appellees contend that we should apply the reasonable basis standard in determin-

16. 486 P.2d at 916–917 (footnote omitted) (emphasis added), quoted with approval in Swindel v. Kelly, 499 P.2d 291, 298 (Alaska 1972). Kelly v. Zamarello, *supra*, also discussed the following decisions by our court reflecting this distinction: Northern Corporation v. Saari, 409 P.2d 845 (Alaska 1966); Aleutian Homes v. Fischer, 418 P.2d 769 (Alaska 1966); Cook v. Alaska Workmen's Compensation Board, 476 P.2d 29 (Alaska 1970); and Pan American Petroleum Corp. v. Shell Oil Co., 455 P.2d 12 (Alaska 1969). 486 P.2d at 916.

17. "The exercise of the reviewing court's discretion in choosing between substitution of judgment and use of the rational basis test in any particular case is influenced by many factors that usually remain inarticulate, including the court's attitude toward the agency, the degree of thoroughness and impartiality in the agency's performance, the extent of the court's agreement or disagreement with the administrative determination, the court's interest in and its appraisal of the importance of the subject matter, alternative demands upon time and attention of the judges at the particular time, need or lack of need for judicial bolstering of administrative policy, need for stability of particular law or policy compared with need for continued fluidity, manner of presentation of cases through briefs and oral arguments, and fortuities of writing opinions explaining scope of review in particular cases." 4 K. Davis, Administrative Law Treatise § 30.14, at 269 (1958).

18. Id. (emphasis added).

ing whether or not there was abuse of discretion in the Commission's decision to adopt the modified procedure. To support this argument, the Commission calls our attention to K & L Distributors, Inc. v. Murkowski, 486 P.2d 351 (Alaska 1971). Murkowski is distinguishable from the case now before us because it involved different underlying policy considerations. The principal question under consideration in that case concerned whether the legislature could put agency action beyond judicial review. We said there:

"The scope of review of an administrative decision to assure compliance with due process under Alaska law is more limited than the broad form of review required under the Alaska Administrative Procedure Act. The safeguard which due process assures is not that a court may examine each factual finding to see that it is correct, or even that it is supported by substantial evidence. Rather, we will review to assure that the trier of fact was an impartial tribunal, that no findings were made except on due notice and opportunity to be heard, that the procedure at the hearing was consistent with a fair trial, and that the hearing was conducted in such a way that there is an opportunity for a court to ascertain whether the applicable rules of law and procedure were observed. The review of factual determinations becomes a review to find whether the administrative decision has passed beyond the lowest limit of the permitted zone of reasonableness to become capricious, arbitrary or confiscatory." [19]

As it stands, Murkowski marks the outer limits of due process beyond which legisla-tive authority may not go. But we are not at all concerned in the present case with due process limitations on legislative or administrative authority. Rather the issues here have to do only with construction or interpretation of legislative enactments.

Apart from any due process considerations which may have been inherent in adoption of the modified procedure, it is apparent the Commission was first compelled to decide whether AS 42.07.141(b) [20] required the Commission to promulgate procedural rules as a necessary prerequisite to use of the modified procedure. Since the question is a matter of legal concern, we conclude that the proper standard of review requires independent judicial resolution unhampered by any prior agency determination.

Recently in United States Smelting, R. & M. Co. v. Local Bound. Comm'n., 489 P.2d 140 (Alaska 1971), we were confronted with an analogous situation. In that case the Local Boundary Commission recommended that property belonging to the United States Smelting, Refining, and Mining Company be annexed to the City of Nome. United States Smelting Refining and Mining thereafter brought an action for declaratory judgment in superior court to have any annexation based on the Local Boundary Commission's recommendation be declared void. The complaint was dismissed in superior court. The company appealed to this court contending that the failure of the Local Boundary Commission to promulgate standards for boundary changes precluded any annexation of the company's properties. Our decision involved an interpretation of subsections (a) and (b) of AS 44.19.260.[21] The Local

---

19. 486 P.2d at 357-358 (footnotes omitted).

20. AS 42.07.141(b) states: "The commission shall adopt regulations, consistent with due process of law, which govern practice and procedure and the conduct of all investigations, hearings and proceedings which it holds."

21. AS 44.19.260(a) lists four functions the Local Boundary Commission "shall" perform. These are:

"(1) make studies of local government boundary problems;

(2) develop proposed standards and procedures for changing local boundary lines;

(3) consider a local government boundary change requested of it by the legislature, the commissioner of community and regional affairs, or a political subdivision of the state; and

(4) develop standards and procedures for the extension of services and ordinances of

Boundary Commission was required to "develop proposed standards and procedures for changing local boundary lines." Since mandatory terms were used we held that the legislature clearly intended the Local Boundary Commission to adopt regulations concerning modification of local boundary lines. In commenting upon *Murkowski* and the proper scope of judicial review of agency action, we observed:

> "Thus, even in light of purported administrative finality *Murkowski* permits judicial review of an administrative decision to ascertain whether the 'applicable rules of law and procedure were observed.' This test delineates the contours of judicial review employed by us in the case at bar in reaching the conclusion that the Local Boundary Commission failed to comply with the mandate of AS 44.19.260(a) that it develop standards for the changing of the local boundary lines. Without doubt these are questions of public policy to be determined in annexation proceedings which are beyond the province of the court. Examples are the desirability of annexation, as expressed in published standards. Judicial techniques are not well adapted to resolving these questions. In that sense, these may be described as political questions, beyond the compass of judicial review. But other annexation issues, such as whether statutory notice requirements were followed, are readily decided by traditional judicial techniques. *Murkowski* clearly permits this latter type of review.

Our decision as to the availability of judicial review of the Local Boundary Commission's action in this case is reflective of our determination that it is administrative action, rather than legisla-

tive action which we have been called upon to review. We thus find unpersuasive the argument that article X, section 12 of the Alaska Constitution and AS 44.19.340 make the decision as to whether the commission has complied with the law exclusively legislative." [22]

The case before us now presents a similar construction issue. The relevant statute, AS 42.07.141, provides in subsection (a) that the Commission may adopt regulations necessary or proper for the exercise of its power or for the performance of its duties. But subsection (b) requires the Commission to adopt regulations consistent with due process of law to "govern practice and procedure and the conduct of all investigations, hearings and proceedings which it holds."

■ Although the adoption of regulations is under subsection (a) discretionary, subsection (b), on the other hand, deals specifically with regulations governing practice and procedure. Hence, the statute imposes a mandatory obligation on the Commission to adopt procedural regulations. In like manner, as in the statute interpreted in *United States Smelting,* the legislature has in AS 42.07.141(b) explicitly expressed a policy requiring compliance with due process guarantees.

The failure of the Commission to adopt such regulations resulted in the due process denial alluded to in the superior court's order, since the trial court concluded that appellant was not given sufficient time to prepare written submissions. This might be an expected result when an agency has not adopted regulations giving parties adequate notice of internal policies and procedures. The legislative policy behind AS 42.07.141(b), which requires the adoption

---

incorporated cities into contiguous areas for limited purposes . . . . "

AS 44.19.260(b) additionally lists two functions that the commission "may" perform. These two functions are:

"(1) conduct meetings and hearings to consider local government boundary changes and other matters related to local government boundary changes, including extensions of

services by incorporated cities into contiguous areas and matters related to extention of services; and

(2) present to the legislature during the first 10 days of a regular session proposed local government boundary changes . . . . "

22. 489 P.2d at 143 (footnote omitted).

of regulations in conformity with due process guarantees, is to avoid due process issues such as the one that arose in the superior court. This legislative policy clearly suggests that the Commission should not conduct its procedures on an ad hoc basis. A consistent application of these regulations would preclude ad hoc considerations and create standards that could be judicially reviewed in accordance with the due process guarantees anticipated in AS 42.-07.141(b). Furthermore, the promulgation of rules establishing administrative standards affords protection against arbitrary exercise of discretionary power.[23]

▮ It is undoubtedly significant that AS 42.07.151(a)[24] exempted the Commission's adjudications from nearly all of the standard procedural safeguards of the Alaska Administrative Procedure Act. However, this exemption should not be interpreted as giving the Commission an unlimited discretion to avoid all procedural

safeguards, since AS 42.07.141(b) requires the promulgation of procedural regulations consistent with due process.[25] Rather, AS 42.07.151 and 42.07.141 should be read in conjunction as giving the Commission considerable flexibility in choosing its own procedures, but all the while requiring the procedures to meet due process of law.

▮ We hold, therefore, that AS 42.07.-141(b) required the Commission to adopt rules of procedure[26] as a prerequisite to the use of a modified procedure. The ad hoc application of the modified procedure to the transfer application of Nabors was improper. Since we hold on this ground, consideration of the other issues raised in this appeal becomes unnecessary.

The order of the superior court in this proceeding, entered November 12, 1972, is vacated and this case is remanded for further proceedings consistent with our decision.

23. A strong argument supporting the proposition that courts should require rule-making to provide administrative standards where feasible as a protection against arbitrary exercise of discretionary power can be found in 1 K. Davis, Administrative Law Treatise §§ 6.13–6.16, 6.20 (1970 Supp.). *See also* Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 597–598 (1971).

24. AS 42.07.151 states:
"(a) The administrative adjudication procedures of the Administrative Procedure Act (AS 44.62) do not apply to adjudicatory proceedings of the commission except that final administrative determinations by the commission are subject to judicial review as provided in AS 44.62.560–44.62.570.
(b) AS 44.62.10–320, 44.62.640 and 44.-62.650 apply to regulations adopted by the commission."

25. This interpretation is further supported by examining AS 44.62.640, AS 42.07.151, and AS 42.10.220(a). AS 42.10.220(a) provides in pertinent part: "Transfer of a permit will be permitted upon compliance with the rules of the commission." AS 44.62.640, which is made applicable to the Alaska Transportation Commission Act by AS 42.07.151(b) includes rules as coming within the definition of the term regulation as used in the Administrative Procedure Act. Accordingly, it is incumbent upon the Commission to adopt rules for the transfer of permits consistent with the requirements of the Administrative Procedure Act.

26. We note that the Interstate Commerce Commission has adopted rules authorizing use of a modified procedure. *See* 49 C.F.R. § 1100.45–54 (1972).