**LAKLOEY, INC., Appellant,**

v.

**UNIVERSITY OF ALASKA, Appellee.**

**No. S–11950.**

Supreme Court of Alaska.

May 18, 2007.

---

John J. Connors, Law Office of John J. Connors, P.C., Fairbanks, for Appellant.

Aimee Anderson Oravec, Law Office of Aimee A. Oravec, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

Lakloey, Inc. appeals a decision of the superior court affirming the University of Alaska Fairbanks's denial of Lakloey's protest of a University procurement award. Because we agree with Lakloey that it: (1) has sufficient standing as an "interested party," and (2) has raised an issue of fact requiring a hearing, we reverse the decision of the superior court and remand this case to the University.

## II. FACTS AND PROCEEDINGS

### A. Facts

On April 18, 2003, the University of Alaska Fairbanks (UAF) published an "Information for Bid," (IFB) soliciting bids for a one-time purchase of a Continuous Deionization LX System (deionization system). The IFB indicated that UAF sought a specific brand name model "or equal." [1] It explained that a non-brand name model would be considered equal to the specific brand name model only "when in the opinion of the procurement officer, . . . [it] fulfill[ed] the salient characteristics set forth in the purchase description, and UAF [could] reasonably anticipate sufficiently similar quality, capacity, durability, performance, utility and productivity." The IFB then went on to describe twelve technical and formal specifications that a non-brand name model would need to meet in order to be deemed equal to the brand name model. Bids were scheduled to be opened on May 9, 2003.

On May 1, 2003, Lakloey, Inc., a potential bidder, submitted a written request to UAF for additional information about the desired technical specifications of the deionization system. The next day, UAF responded to Lakloey's request with Amendment No. 1. This amendment provided a number of "clarifications" to the original IFB, including information about the quality of water that would be going into the deionization system, the desired flow rate of the system, and the desired quality of the finished water coming out of the system. The amendment also rescheduled the bid opening date to May 13, 2003. All bidders were required to acknowledge the amendment's "clarifications" prior to this new bid opening date. [2]

UAF received its first bid on May 7, 2003. Over the next week, UAF received five more bids, including one from Lakloey. On May 13 all six of these bids were opened, and it was determined that Delta Industrial appeared to have submitted the lowest bid. Because Delta Industrial's bid was not for

---

1. The IFB stated that UAF sought a U.S. Filter Model CDILX2404A4AB "or equal."

2. The amendment stated: "This Amendment must be signed and returned with your bid, or otherwise acknowledged, prior to the Opening Date and Time listed above."

the brand name model specified in the IFB, UAF requested and conducted an internal evaluation of the bid and offered model. On May 15 UAF determined that the model bid by Delta Industrial did not meet four of the twelve specifications required by the IFB and consequently concluded that the bid was "technically unacceptable and non-responsive." This conclusion left U.S. Filter as the low bidder, Frontier Plumbing Supply as the second lowest, and Lakloey as the third lowest.

Although U.S. Filter, the lowest bidder, had placed a bid for the brand name model specified in the original IFB, it had failed to acknowledge Amendment No. 1 prior to the bid opening date. On May 20 UAF contacted U.S. Filter and asked it to "verify that [its] bid was submitted with the intention[ ] of complying solely with the terms and conditions listed within the IFB." On May 23 U.S. Filter verified that its bid was indeed submitted "solely in compliance with [these] terms and conditions." That same day, UAF drafted a "Memorandum of Selection," indicating that the Delta Industrial bid was non-responsive and recommending that the contract be awarded to U.S. Filter. Four days later, on May 27, UAF issued a "Notice of Intent to Award" the contract to U.S. Filter.

### B. Proceedings

On May 30, 2003, Lakloey mailed UAF a written protest of the University's intent to award the contract to U.S. Filter.[3] This protest was brief. It stated:

> This is a protest of the Notice of Intent to Award of the referenced solicitation (IFB No. 03B0018DH).
>
> According to the information provided by your office, the bid of U.S. Filter Corp was clearly non-responsive. In their bid they did not acknowledge Amendment # 1.
>
> Amendment # 1 was a material change in both the contract conditions of quality and quantity.

On June 2 UAF issued a letter notifying all interested parties that it had received a protest of its intent to award the contract to U.S. Filter and that the protest had been received within the prescribed ten-day notice period.[4] Four days later, on June 6, the Director of Purchasing for UAF denied Lakloey's protest. Although the Director admitted that Lakloey was an interested party with standing to protest the award, he found Lakloey's protest "to be without merit."

On June 9, 2003, Lakloey sent a second letter to UAF entitled "Appeal of Denial of Protest." This second letter was much longer than Lakloey's initial protest and raised a host of detailed arguments. Among these arguments was a reiteration of Lakloey's initial assertion that Amendment No. 1 was a material change to the IFB that established "objective performance standards [that] became obligatory to all bidders" upon its issuance. On June 17 the Chief Procurement Officer of UAF acknowledged receipt of Lakloey's second letter and stated that he had asked the Director of Purchasing to complete a protest report. He also noted that he intended to hire Roger Brunner as his "advisor" and that Brunner would also serve as hearing officer "if a hearing [became] necessary."

On June 27, 2003, the Director of Purchasing filed the requested protest report. In this report, UAF reversed itself on the issue of Lakloey's standing. The report reasoned that Lakloey did not in fact have standing because, as the third lowest bidder, Lakloey would not receive the contract even if it were withdrawn from U.S. Filter and therefore did not have a "direct economic interest in the outcome" of its protest. The report then went on to conclude that, even if Lakloey did have standing, its protest would still fail because: (1) Lakloey's initial letter did not request a specific form of relief as required

---

3. The protest letter was dated May 1, 2003, but the parties agree that the letter was incorrectly dated and actually sent on May 30.

4. Board of Regents (BOR) Policy P05.06.617(a) states that a "protest or contract dispute shall be resolved in accordance with the provisions of AS

36.30.560–36.30.699 and P05.06.617–05.06.695." AS 36.30.565(a) provides, in relevant part, that a "protest based upon alleged improprieties in an award ... must be filed within 10 days after a notice of intent to award the contract is issued by the procurement officer."

by statute,[5] and (2) Lakloey's initial letter did not establish that Amendment No. 1 was a material change that U.S. Filter was required to acknowledge.[6] The protest report also described Lakloey's second letter to UAF as an appeal and deemed a number of arguments raised for the first time in this letter to have been waived.

On June 30, 2003, the Chief Procurement Officer wrote to Lakloey and notified it that it had ten days in which to respond to the protest report. In a letter dated July 5, Lakloey responded to the protest report. In this response, Lakloey disputed the protest report's assertion that it was not an interested party, argued that its second letter was not an appeal but a "detailed explanation of the basis" of its initial protest, and reiterated its argument that Amendment No. 1 was a material change to the IFB. On July 14 UAF issued a rebuttal to Lakloey's response to the protest report. On July 22 the Chief Procurement Officer sent a letter to Lakloey, formally accepting Lakloey's appeal and confirming that Brunner had been engaged to "serve as the [Chief Procurement Officer's] advisor for this matter and as hearing officer if a hearing is conducted."

On September 8, 2003, Brunner—the Chief Procurement Officer's advisor as well as hearing officer—sent a letter to Lakloey that concluded "there are no contested issues of material fact and therefore ... a hearing is not required." Enclosed with this letter was a proposed draft decision denying Lakloey's appeal for essentially the same reasons outlined in the protest report. The hearing officer stated that he would delay submitting this draft decision to the Chief Procurement Officer until September 17 to allow Lakloey and UAF a chance to comment upon or object to the decision.

On September 13, 2003, Lakloey responded and maintained that there were contested issues of material fact and that Lakloey was therefore entitled to an administrative hearing. In response, on October 23, the hearing officer wrote to Lakloey and UAF to set up a "status hearing," the purpose of which was to "discuss in more detail the issues of material fact which Lakloey claims exist[ ], and what evidence Lakloey would expect to present on those issues if a hearing were held." This status hearing eventually took place on November 14. At the close of the hearing, the hearing officer articulated that he had not yet decided whether a full hearing was appropriate.

On December 19, 2003, the hearing officer wrote to UAF and Lakloey to request briefing solely on the issue of the timeliness of Lakloey's two protest letters and whether its second letter was an appeal.[7] According to this letter, the hearing officer would "not ... get into the issues of whether the water quality being fed to the machine was as stated or whether the brand name performs as stated." On December 24 Lakloey wrote a letter to the hearing officer indicating that it still wanted an administrative hearing on "the other issues of fact." On December 30 Lakloey submitted its brief and materials on the issue of timeliness. In its brief, Lakloey argued that its second letter was not an appeal but a "detailed document to support the protest." On January 16, 2004, UAF submitted its brief and materials. The hearing officer held a hearing on the issue of timeliness on April 14, 2004.

About a week after the hearing on the issue of timeliness, the hearing officer issued a second proposed decision. In this decision, the hearing officer found that Lakloey's second, more detailed protest letter was an ap-

---

5. AS 36.30.560(5) states that a protest shall include "the form of relief requested."

6. The Director of Purchasing's protest report stated that "Amendment # 1 provided clarifying information, but did not change the 'brand name or equal' item description of the solicitation in any way." As such, the protest report concluded, "[f]or a bidder offering the exact brand name product specified in the solicitation, return of Amendment # 1 was a minor informality ... [that] was waived by UAF."

7. The hearing officer stated he wanted briefing on the following issues:

When the Notice of Intent to [A]ward was issued and how it was sent to Lakloey and when it was received by Lakloey. When Lakloey filed its Protest and its Appeal and how they were sent to the University and when they were received. Any other relevant dates regarding timeliness.

peal and any issues presented for the first time in that letter were therefore waived as untimely. The decision then went on to explain that this waiver left Lakloey with only one contested issue: "whether U.S. Filter's bid is non-responsive" because it failed to acknowledge Amendment No. 1. The decision reasoned that UAF has the discretion to overlook minor informalities when an amendment is "immaterial, with only [a] negligible effect on price, quantity, quality or delivery." It then concluded that Amendment No. 1 was immaterial and that UAF properly overlooked U.S. Filter's failure to acknowledge it. The decision also reiterated that Lakloey did not have standing to file a protest and that no hearing was necessary because there were no disputed issues of material fact. The decision rejected the contention that Lakloey's original protest was void for failure to request a form of relief. On April 28, 2004, the Chief Procurement Officer formally adopted this proposed decision in its entirety.

On May 27, 2004, Lakloey appealed to the superior court. On April 22, 2005, the superior court issued a memorandum decision on appeal in which it held that Lakloey was "not an 'interested party' eligible to protest the bid and, even if it is an interested party, Lakloey's rights were not violated."

Lakloey now appeals.

## III. STANDARD OF REVIEW

■ "When the superior court is acting as an intermediate court of appeal in an administrative matter," we "independently review the merits of an administrative board's decisions."[8] When reviewing the merits of an agency's decision, we apply one of four different standards of review: (1) the "substantial evidence" test applies to questions of fact; (2) the "reasonable basis" test applies to questions of law involving agency expertise; (3) the "substitution of judgment" test applies to questions of law where no expertise is involved; and (4) the "reasonable and not arbitrary" test applies to questions about agency regulations and the agency's interpretation of those regulations.[9]

## IV. DISCUSSION

Lakloey raises four primary issues on appeal: (1) whether Lakloey is an "interested party" with standing to protest the contract award; (2) whether Amendment No. 1 was a material amendment to the IFB; (3) whether Lakloey is entitled to an administrative hearing; and (4) whether Lakloey is entitled to its bid preparation costs.

### A. Lakloey Has Standing as an Interested Party.

■ Alaska's general procurement code— codified at AS 36.30.005–.995—transfers purchasing authority to the Regents of the University of Alaska and requires the Regents to adopt purchasing regulations.[10] This authority is to be exercised in accordance with the general procurement code's rules, requirements, and procedures to "the maximum extent possible."[11] In fulfilling this responsibility, the Regents have retained the general procurement code's requirement that a bidder have standing as an "interested party" in order to file a protest of a contract award.[12] As defined by Board of Regents Policy P05.06.990(a)(7), an "interested party" is "an actual or prospective bidder or offeror whose economic interest might be affected substantially and directly by the issuance of a contract solicitation, the award of a contract, or the failure to award a contract." This definition mirrors the general procurement code's definition of an "interested party," but omits

8. *Gunter v. Kathy–O–Estates,* 87 P.3d 65, 68 (Alaska 2004).

9. *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

10. AS 36.30.005(c) provides, in relevant part: Notwithstanding other provisions of law, all rights, powers, duties, and authority relating to the procurement of supplies, services, professional services, and construction and the dis-

posal of supplies for the University of Alaska are transferred to the Board of Regents.

11. AS 36.30.005(c) states the following: "To the maximum extent possible, authority granted under this subsection shall be exercised in accordance with this chapter."

12. BOR Policy P05.06.617(a) (stating that protests shall be resolved in accordance with AS 36.30.560–.699 and P05.06.617–.695).

the code's explanation that "whether an actual or prospective bidder or offeror has an economic interest depends on the circumstances." [13]   In sum then, both the University's regulations and the general procurement code require UAF to determine whether Lakloey's economic interests might be "affected substantially and directly" by the outcome of its protest.

Although UAF did not initially question Lakloey's standing, it later reversed course and concluded that Lakloey did not in fact satisfy the requirement that it be an "interested party."   The final decision issued by UAF's hearing officer noted that Lakloey was "not the next lowest bidder after U.S. Filter, and would not have received the award, even if U.S. Filter's bid had been disallowed."   The decision then went on to reason that because Lakloey would not receive the award if its protest proved successful, it did "not have an economic interest that may be substantially and directly affected by the award of the contract or failure to award it."   Consequently, the decision concluded that "Lakloey [did] not have standing, under the specific circumstances here, as an 'interested person.' "   On appeal, UAF maintains that this decision and line of reasoning are correct.   Lakloey responds that its status as a bidder who placed a bid for the deionization system is sufficient to establish that it is an interested party in this case.

We begin our analysis by noting that the proper standard of review to apply to this issue is not readily apparent.   It is unclear whether UAF believes that it is the general procurement code's provisions or the University's own regulations that require Lakloey to be the next lowest bidder.   The final decision issued by UAF's hearing officer cited only the general procurement code;   on the other hand, the brief filed in this case by UAF—while still focused primarily upon the general procurement code—cites both the code and the University's own regulations.   It is equally unclear whether such a distinction between law and regulation is of· any significance in this case since, as already noted, the general procurement code demands that the University's regulations mirror the code's rules, requirements, and procedures "to the maximum extent possible." [14]   Because we conclude that UAF's interpretation of the phrase "interested party," which requires that Lakloey be the next lowest bidder, is unreasonable even under the more deferential "reasonable and not arbitrary" test reserved for reviewing an agency's interpretation of its own regulations, we need not resolve these ambiguities here.[15]

We have previously noted that "in exchange for a bidder's investment of the time and resources involved in bid preparation, a government agency must be held to an implied promise to consider bids honestly and fairly." [16]   In other words, agencies implicit-

13.   The full text of AS 36.30.699 provides:

"[I]nterested party" means an actual or prospective bidder or offeror whose economic interest may be affected substantially and directly by the issuance of a contract solicitation, the award of a contract, or the failure to award a contract;   whether an actual or prospective bidder or offeror has an economic interest depends on the circumstances.

14.   AS 36.30.005(c);   *but see Gunderson v. Univ. of Alaska, Fairbanks,* 922 P.2d 229, 233 (Alaska 1996) (holding that, despite AS 36.30.005(c), "the appropriate standard for reviewing the decision of the University's chief procurement officer is the reasonable basis standard rather than the substitution of judgment standard").

15.   Were UAF's argument based solely upon its interpretation of the general procurement code, we would apply the substitution of judgment test.   As we have previously noted, standing in this state is a judicially created doctrine.   *Bowers Office Products, Inc. v. Univ. of Alaska,* 755 P.2d 1095, 1097 (Alaska 1988).   In addition, it is a doctrine that the judiciary deals with on a day-to-day basis in the course of carrying out its ordinary business.   As such, the judiciary is particularly adept at determining the extent of injuries suffered by or the general interests of potential litigants. Nothing about this particular case is so peculiar as to cast doubt upon the judiciary's competence to decide the issue of standing or to bring the issue within the sphere of UAF's expertise.   In short, whether Lakloey has standing as an "interested party" under AS 36.30.005(c) is a question of law that does not involve any agency expertise.

16.   *King v. Alaska State Hous. Auth.,* 633 P.2d 256, 263 (Alaska 1981);   *see also Laidlaw Transit, Inc. v. Anchorage Sch. Dist.,* 118 P.3d 1018, 1025 (Alaska 2005) (noting that "the state owed all bidders a fair and honest consideration of their proposals") (citations omitted).

ly guarantee potential bidders that their expenditures of time and resources on bid preparation will not be wasted on an unfair or dishonest bidding process. Bidders undoubtedly possess an economic interest in ensuring that agencies honor this implicit guarantee, and it is this interest that Lakloey seeks to vindicate.

From its initial protest to its current appeal, the core of Lakloey's argument has been that Amendment No. 1 was a material change to the IFB and that U.S. Filter did not recognize or meet the demands of Amendment No. 1. More specifically, Lakloey contends that Amendment No. 1 established specifications that exceeded the capabilities of the brand name model identified in the original IFB and that U.S. Filter's bid for the brand name model was therefore nonresponsive. If Lakloey's contention is correct, then UAF may have breached its guarantee to consider bids fairly and honestly by awarding the contract to U.S. Filter—by assessing the responsiveness of bids based upon incorrect criteria, accepting a product markedly different from the one it asked for, and ultimately wasting the time and resources of bidders who could have potentially chosen to offer a less capable product at a better price or chosen not to bid at all. Lakloey certainly has an economic interest in ensuring that its bid was honestly and fairly considered and its time and resources expended on placing that bid not wasted.

Of course, standing to file a protest requires more than an economic interest in ensuring that the procurement process was fair and honest. Under both the general procurement code and the University's regulations, a bidder must possess an economic interest that "might be affected substantially and directly" by the outcome of its protest. As the general procurement code notes, whether or not a bidder possesses such an interest is necessarily dependent upon the circumstances,[17] and the circumstances of this case dictate that Lakloey is indeed an interested party with standing to protest.

UAF determined that five of the six bids submitted for the deionization system were "administratively and technically responsive"

to the requirements laid out in the IFB and Amendment No. 1. Out of these five responsive bids, UAF determined that U.S. Filter was the low bidder, Frontier Plumbing Supply the second lowest, and Lakloey the third lowest. The final decision issued by UAF's hearing officer reasoned that because Lakloey was determined to be the third lowest responsive bidder, it would not receive the contract even if its protest proved successful. As a result, the opinion concluded that Lakloey did not have an economic interest in the outcome of its protest. But the very nature of Lakloey's argument precludes this conclusion.

Lakloey asserts that UAF ignored Amendment No. 1's heightened specifications and evaluated the responsiveness of U.S. Filter's bid using the wrong criteria. Assuming that UAF used the same criteria in evaluating all of the bids—and there is nothing in the record to suggest that it did not—then Lakloey's assertion calls into question the responsiveness of every bid submitted. Until it is determined what criteria and specifications UAF used in evaluating the bids, it is impossible to know the proper ordering of the bids. If Lakloey prevails on its protest and the award to U.S. Filter is revoked, it may turn out, upon application of the correct criteria, that the second lowest bidder is not in fact responsive. This eventuality would place Lakloey—which is currently understood to be the third lowest bidder—as the low bidder. In other words, Lakloey's economic interest "might be affected directly and substantially" by the outcome of its protest.

We therefore conclude that Lakloey is an "interested party" with standing to protest UAF's award to U.S. Filter. Of course, this is not to say that UAF may never deny a protesting bidder standing because that bidder is not next in line to receive the contract. There may in fact be many situations in which it would be entirely reasonable for UAF to deny a bidder standing solely on this basis. Our decision today merely maintains that the requirement that a protesting bidder be the next lowest bidder cannot reasonably

**17.** AS 36.30.699.

be applied under the circumstances presented by this case.

### B. Lakloey Is Entitled to a Hearing on the Merits.

In accordance with the general procurement code, UAF awards contracts to the lowest responsive bidder "whose bid conforms in all *material* respects to the requirements and criteria set out in the invitation to bid." [18] Similarly, the University of Alaska Procurement Manual maintains that a bid's nonconformity does not render that bid nonresponsive "when the effect on price, quantity, quality or delivery is negligible and is determined by the procurement officer to be a minor informality." [19] We have previously explained that a bidder's nonconformity is "material" under the general procurement code if it gave that bidder a "substantial advantage" over conforming bidders.[20] UAF agrees that this is also the proper test with regard to whether a bidder's nonconformity is "negligible" under the University's guidelines.[21] As we have previously explained, "we ... review an agency's determination of [a bidder's] responsiveness under the reasonable basis standard." [22]

At the heart of Lakloey's protest lies the contention that Amendment No. 1 represented a material amendment and worked a material change to the IFB. Underlying this central contention is Lakloey's factual assertion that the amendment "establishe[d] feed water [and other technical] requirements which exceed[ed] the capabilities" of the specific brand name model identified in the initial IFB. As a result, Lakloey argues, U.S. Filter's eventual offer of the brand name model specified in the original IFB did not meet Amendment No. 1's requirements and was therefore not responsive and should not have been awarded the contract.[23]

The final decision issued by UAF's hearing officer maintained that "[t]he amendment added or clarified specifications that other brands or models would have to comply with, but it did not affect any bids for the exact model specified [in the IFB], which already met those specifications." Based upon this premise, the decision reasoned that "Amendment No. 1 created no additional burden for U.S. Filter because it submitted a bid for the exact model specified." Therefore, the decision concluded, "U.S. Filter's failure to acknowledge the amendment did not give it any advantage under the circumstances." Taken in isolation, these portions of the decision could be read as holding that Lakloey's factual assertions were simply untrue—that Amendment No. 1 did not in fact require specifications for non-brand name models that significantly exceeded the capabilities of the brand name model specified in the original IFB. However, throughout the course of the administrative process below, the hearing officer repeatedly asserted that Lakloey's protest did not require the resolution of any disputed factual issues, and the final decision once again reiterated that Lakloey's appeal involved no "genuine issues of material fact." [24] As a result, the hearing officer's decision can only be understood as holding the following: even assuming the truth of Lakloey's factual assertions about Amendment No. 1, that amendment did not as a

---

**18.** AS 36.30.170(a) (emphasis added).

**19.** Section 5.2(c).

**20.** *Laidlaw Transit*, 118 P.3d at 1032.

**21.** BOR Policy P05.06.990(a)(8) takes a similar approach in defining "minor informalities." According to that policy, "minor informalities" are "insignificant matters that ... can be waived or corrected without prejudice to other bidders" or "matters of form rather than substance."

**22.** *Laidlaw Transit*, 118 P.3d at 1032.

**23.** Lakloey also raises two secondary arguments: (1) U.S. Filter should not have been permitted to amend its bid after the bid opening, and (2) the procurement IFB and procurement process amounted to an inappropriate brand name or sole source specification. However, these arguments were first raised in Lakloey's second protest letter, and there is substantial evidence to support UAF's determination that this letter was untimely except as an appeal. These arguments, therefore, were waived.

**24.** On appeal, UAF similarly maintains that Amendment No. 1 made "no change" to the objective standards established by the original IFB and that "there were no contested issues of fact."

matter of law affect bids for the brand name model specified in the original IFB.

■ But the original IFB noted that its identification of a brand name model was merely a shorthand method of describing the "standard of quality, performance and characteristics [that UAF] desired." Amendment No. 1 subsequently provided additional information about the technical specifications that UAF desired. Under standard contract law and the terms of the original IFB itself,[25] it is the last-in-time offer that prevails. In this case, it was Amendment No. 1 that was last-in-time, and that amendment and its specifications were therefore, as a matter of law, the proper benchmark against which to measure each of the bidders' responsiveness. If Lakloey is correct that Amendment No. 1 required specifications that exceeded the capabilities of the brand name model specified in the original IFB, then U.S. Filter's bid for the brand name model may not have conformed with UAF's requirements and specifications, and that nonconformity may have provided U.S. Filter with a substantial advantage over other bidders.

In the end then, Lakloey's protest presents two questions: (1) did Amendment No. 1 contain technical specifications that exceeded the brand name model's specifications, and, if so, (2) were these technical specifications so significantly different from the brand name model's specifications as to give U.S. Filter a substantial advantage over bidders who conformed with the amendment. Both of these questions implicate technical factual issues,[26] and Lakloey is therefore entitled to a hearing under the general procurement code and the University's own regulations.[27] Consequently, we remand this case to UAF.[28] Because we do not reach the merits of Lakloey's challenge, we do not decide whether Lakloey is entitled to its bid preparation costs.

## V. CONCLUSION

For the foregoing reasons we REVERSE the decision of the superior court and REMAND to UAF for further proceedings consistent with this opinion.

---

**25.** The IFB provided the following: "The University may make modifications within the general scope of this order by giving notice to Seller and subsequently confirming such modifications in writing." The IFB also noted that "[i]t shall be the bidder's responsibility to ascertain prior to submitting a bid that he/she has received all amendments issued and bidder shall acknowledge their receipt in the bid."

**26.** For instance, determining whether the technical specifications in the amendment were significantly different from the brand name model's specifications may raise the following factual issues: (1) the technical and practical effects that the different specifications would have on the water quality, and (2) the price difference between systems meeting the different specifications.

**27.** AS 36.30.610(b) allows a decision on appeal to issue without a hearing "if the appeal involves questions of law without genuine issues of fact."

BOR Policy P05.06.617(a) states that a "protest or contract dispute shall be resolved in accordance with the provisions of AS 36.30.560–36.30.699 and P05.06.617–05.06.695."

**28.** Because we are convinced that a remand will resolve the majority of potential due process issues raised by this case, we decline to reach Lakloey's due process arguments or decide whether those arguments have been waived. Lakloey does, however, raise one issue that gives us pause. In its opening brief on appeal, Lakloey questions the propriety of the Chief Procurement Officer's employment of a single attorney as both his advisor and the hearing officer. Although this dual employment raises concerns, we do not reach the issue for two reasons. First, Lakloey concedes in its reply brief that this issue "was not raised in this appeal and is not before the court." Second, UAF has the opportunity on remand to employ a new hearing officer who has not also acted as the Chief Procurement Officer's advisor.