Eugene RACINE, Appellant,

v.

STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellee.

No. 6399.

Supreme Court of Alaska.

May 13, 1983.

W.G. Ruddy, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellant.

Thomas M. Jahnke, Asst. Atty. Gen., and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

John E. Casperson, Juneau, for amicus curiae Alaska Public Employees Ass'n.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

BURKE, Chief Justice.

This appeal is a challenge of an arbitration award upholding the discharge of Eugene Racine (Racine) from state employment. The superior court affirmed the arbitrator's decision and we, in turn, affirm.

Racine, Captain of the M/V Tustumena, was discharged from his employment with the Alaska State Ferry System on March 10, 1977. His termination resulted from alleged violations of Alaska law[1] and Division of Marine Transportation policy.[2]

Contrary to state law and regulatory policy, Racine purchased in Bellingham, Washington, 200 cases of beer which he stored on the Tustumena and transported to Seward, Alaska. Racine was tried by a jury and acquitted on the charge of unlawful possession of liquor for the purpose of resale without a license.

The matter of Racine's discharge was submitted to arbitration on May 19, 1978 and on July 19, 1978, Arbitrator Conant held that Racine was properly discharged. Pursuant to the grievance procedure established in the International Organization of Masters, Mates and Pilots, Local Number 6, Collective Bargaining Agreement, the arbitrator's decision is final and binding.[3]

Racine appealed the arbitration award to the superior court, which affirmed the decision of the arbitrator. This appeal followed.

The state has argued that the International Organization of Masters, Mates and Pilots Local Number 6 (Union) and not Racine, had the right to appeal the arbitrator's decision since the Union is the sole and exclusive representative in any grievance proceeding. The state also argued that the introduction of hearsay evidence at the arbitration hearing and its consideration by the arbitrator did not deprive Racine of his right to due process. The lower court accepted these arguments as it affirmed the arbitrator's award "[f]or the reasons and upon the authorities urged on behalf of the State." In this appeal, Racine asserts that the trial court erred in accepting both of the state's arguments.

---

1. AS 04.11.010 (former AS 04.10.010) provides, in part:

    (a) Except as provided in AS 04.11.020, a person may not ... sell, offer for sale, possess for sale or barter, traffic in or barter an alcoholic beverage unless under license or permit issued under this title.

    AS 43.60.010 provides, in part:

    (a) Every ... retailer, wholesaler, ... who sells intoxicating liquors in the state or who consigns shipments of intoxicating liquors into the state, ... shall pay on all malt beverages (alcoholic content of one percent or more by volume), ... the following taxes: (1) malt beverages at the rate of 25 cents a gallon or fraction of a gallon ....

2. A memorandum dated May 7, 1974, from the Commissioner of the Department of Public Works to the Director of the Division of Marine Transportation, prohibited the use of deck space or vehicles, other than the employees' personal vehicles by ferry employees for transporting personal materials and/or merchandise between ports.

3. Employees of the Division of Marine Transportation are subject to the provisions of the Public Employment Relations Act which requires a grievance procedure with binding arbitration as the final step. AS 23.40.210; *Hafling v. Inlandboatmen's Union*, 585 P.2d 870 (Alaska 1978).

■ A state employee may seek judicial review of an arbitration award subsequent to compliance with and exhaustion of the collective bargaining agreement's grievance procedures. *See Winslow v. State,* 2 Hawaii App. 50, 625 P.2d 1046, 1050–51 (Hawaii App.1981). Racine's grievance was fully processed by the Union in accordance with the collective bargaining agreement. Having exhausted the mandatory grievance procedures, Racine is not barred from seeking judicial review of the arbitrator's decision.

We next must determine whether the acceptance and consideration of hearsay evidence by the arbitrator was gross error and a denial of due process. Racine argues that the inclusion and consideration of hearsay denied him the right to confront and cross-examine adverse witnesses. Racine also contends that his questioning the introduction of hearsay evidence at the hearing was sufficient to constitute a clear objection to its admission.

This court articulated the scope of judicial review of an arbitrator's award in *Nizinski v. Golden Valley Electric Association, Inc.,* 509 P.2d 280, 283 (Alaska 1973):

> If the parties have submitted the dispute to binding arbitration the merits of the controversy are not subject to review. However, there are certain instances where courts will interfere with decisions made by an arbitrator. Some of the most common instances in which a court can grant relief is where there has been gross negligence, fraud, corruption, gross error or misbehavior on the part of the arbitrator.

(Footnotes omitted.) This court further held in *City of Fairbanks v. Rice,* 628 P.2d 565, 567 (Alaska 1981), that the gross error standard "means that only those mistakes which are both obvious and significant justify interference with an arbitrator's award." (Footnote omitted.) *See Morris v. Zuckerman,* 69 Cal.2d 686, 72 Cal.Rptr. 880, 446 P.2d 1000, 1004 (Cal.1968) (court may vacate award if it determines that arbitra-

tors exceeded their powers); *Keen v. IFG Leasing Co.,* 28 Wash.App. 167, 622 P.2d 861, 865 (Wash.App.1980) (court will not review arbitration award unless errors of law or fact are apparent on face of award).

■ We find that the arbitrator's acceptance and use of hearsay did not constitute gross error. The strict rules of evidence governing admissibility of hearsay in judicial proceedings do not apply to administrative hearings. *Marlowe v. United States Immigration and Naturalization Service,* 457 F.2d 1314, 1315 (9th Cir.1972); *Cook v. Alaska Workmen's Compensation Board,* 476 P.2d 29, 31 (Alaska 1970). Nor do they apply to arbitration proceedings. *IBEW Local-396 v. Central Telephone Co.,* 94 Nev. 491, 581 P.2d 865, 867 (Nev.1978). Unless the hearsay evidence is inherently unreliable, an award will not be set aside merely because evidence is offered and accepted which would be excluded in a court of law.

■ While an arbitrator may consider hearsay, the grievance arbitration process does not permit the resolution of disputes involving substantial rights without regard to constitutional safeguards. *See Dewey v. Reynolds Metals Co.,* 291 F.Supp. 786, 790 (S.D.Mich.1968). Hearsay evidence may not be used in such a manner as to deprive a party of the right to a fair hearing. The consideration and weight given to hearsay evidence may have a tendency to deprive a party of the right and opportunity to conduct cross-examination in a particular case. We therefore must decide whether the hearsay admitted affected the correctness of the decision or had such a harmful or unfair effect as to vitiate the hearing.

■ Although hearsay evidence was presented at Racine's arbitration hearing in the form of reports of investigating officers and copies of records of regularly conducted business governmental activity, the reports and records were substantiated by oral testimony.[4] In addition, Racine was afforded

---

4. Police Chief Bencardino of Seward, Alaska, Investigator Thomas of the Alaska State Troop- ers stationed in Seattle, Washington, and Import Supervisor Bryant of the Alcoholic Bever-

the opportunity to cross-examine the investigating officers. He was afforded the opportunity to subpoena witnesses on his own behalf or to offer into evidence affidavits of these witnesses if they were unavailable. He was also afforded the opportunity to rebut much of the hearsay evidence by his own testimony. He did none of these things.

On questions of the admissibility of evidence, the arbitrator has great flexibility. Arbitrator Conant's decision specifically recognized that the hearsay was "interspersed ... in an entirely credible general account of the investigation" and that Racine failed to avail himself of the procedural rights he now claims were violated. The arbitrator made his decision based upon uncontroverted facts, all the evidence presented and the witnesses' credibility. The right to submit evidence to the arbitrator was in no way curtailed. The right to cross-examine the authors of the reports was in no way frustrated or denied. *See Keen,* 622 P.2d at 865–66. *Cf. Commercial Union Co. v. Smallwood,* 550 P.2d 1261, 1266–67 (Alaska 1976) (employer did not waive right to cross-examine physicians who authored reports by failing to subpoena such physicians due to prohibitive costs and fees).

Racine was afforded a fair and impartial hearing with adequate opportunity to exercise his due process rights. We therefore conclude that it was not gross error for the arbitrator to admit and consider the hearsay evidence in rendering his decision. We further hold that because the acceptance and consideration of the hearsay evidence does not amount to gross error, we need not determine whether Racine's objection to its introduction was timely and sufficient. In conclusion, we affirm the superior court's affirmance of the arbitration award discharging Racine from state employment.

AFFIRMED.

CONNOR, J., not participating.

age Control Board testified concerning their investigations of Racine's possible violations of

Alaska State statutes and Alaska Marine Transportation regulations and policies.