Walter PASTERNAK, Appellant,

v.

STATE of Alaska, COMMERCIAL FISHERIES ENTRY COMMISSION, Appellee.

No. S–12239.

Supreme Court of Alaska.

Sept. 7, 2007.

Michael Hough, Homer, for Appellant.

John T. Baker, Assistant Attorney General, Anchorage, and David W. Márquez, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Chief Justice.

## I. INTRODUCTION

The Alaska Limited Entry Act created the Commercial Fisheries Entry Commission (CFEC) to regulate entry into commercial fisheries.[1] In 1985 the Commission limited participation in the Northern Southeast Inside sablefish longline fishery, a non-distressed fishery, to a maximum of seventy-three permits.[2] CFEC distributes the seventy-three permits on a points-based application system.[3] Walter Pasternak challenges CFEC's determination that seventy-three is the maximum and optimum number of permits for this fishery and contends that CFEC erred in failing to consider his claim for additional points for past participation based on extraordinary circumstances. The superior court upheld CFEC's decisions, and Pasternak appeals. Because our decision in *Simpson v. State, Commercial Fisheries Entry Commission* forecloses Pasternak's challenges to the maximum and optimum number of permits for this fishery and because Pasternak's claim for extraordinary circumstances fails, we affirm the superior court.

## II. FACTS AND PROCEEDINGS

Alaska's Limited Entry Act was enacted in 1973 to "promote the conservation and the sustained yield management of Alaska's fishery resource and the economic health and stability of commercial fishing in Alaska by regulating and controlling entry of participants and vessels into the commercial fisheries in the public interest and without unjust discrimination."[4] CFEC is charged with implementing the Act.[5] CFEC determines the optimum number of permits for each fishery

1. AS 16.43.020.

2. *Simpson v. State, Commercial Fisheries Entry Comm'n,* 101 P.3d 605, 607 (Alaska 2004).

3. 20 Alaska Administrative Code (AAC) 05.705 (2006).

4. AS 16.43.010(a).

5. AS 16.43.100.

and establishes qualifications for the issuance of permits.[6] Alaska Statute 16.43.250(a) requires that CFEC rank "applicants for entry permits according to the degree of hardship which they would suffer by exclusion from the fishery."

In 1985 CFEC limited participation in the Northern Southeast Inside sablefish (blackcod) longline fishery because it "feared for the economic and environmental health of the fishery."[7] Required to set the maximum number of permits at a level "no lower than the highest number of units of gear in the fishery in the four years prior to the January 1, 1985 qualification date,"[8] CFEC determined that the maximum number of permits for the fishery would be seventy-three.[9] CFEC had authority to set the optimum number of permits for the non-distressed fishery at a level higher than the maximum number of seventy-three.[10] In April 2000 CFEC issued a public notice proposing seventy-three permits as the optimum number, as well as the maximum number.[11] In May 2001 seventy-three became the optimum number.[12] CFEC distributes the seventy-three permits on a point system that determines an applicant's order of priority based on past participation as a skipper and crew member in the fishery and economic dependence on the fishery, with points for income dependence and vessel investment.[13]

In November 1987 Walter Pasternak submitted a timely application for a limited entry permit. Pasternak claimed fifty-one points, including eighteen points for past participation as a skipper in 1984, three points for past participation as a crew member in 1980, fifteen points for vessel ownership of the F/V Lory, and fifteen points for income dependence.[14] On April 14, 1989, CFEC no-

tified Pasternak that it had awarded him forty-three and one-half points, crediting him with the requested twenty-one points for past participation, fifteen points for income dependence, and half the fifteen points he claimed for vessel ownership. CFEC reduced the vessel ownership points because Pasternak and his wife jointly owned the F/V Lory.

Pasternak requested a hearing "regarding . . . points given in evaluation for investment in the [F/V Lory]," contending that he was entitled to all fifteen points claimed for vessel investment. Hearing Officer Jesse Walters conducted a hearing on October 31, 1989. At the hearing, Pasternak and his wife Megan testified that although they owned the vessel as joint tenants, they did so for estate planning purposes; Megan never operated the F/V Lory as an interim-use or entry permit holder in any Alaskan fishery in the relevant time period. On March 6, 1991, Walters issued a written decision finding the testimony of the Pasternaks to be credible, awarding all fifteen vessel ownership points, and declaring that Pasternak's application would be finally classified with fifty-one points. Because Pasternak did not request further review, the classification became final in May 1991.

On January 21, 2003, CFEC issued a Final Agency Order and Decision Denial Notice. CFEC denied Pasternak's application, indicating that fifty-one points was insufficient to qualify him for a permit. On February 13, 2003, Pasternak filed a petition for reconsideration, claiming that CFEC had set the maximum and optimum number of permits too low. On February 19, 2003, Pasternak filed an appeal in superior court.[15] The su-

---

**6.** AS 16.43.100(a)(6) & (9).

**7.** *Simpson,* 101 P.3d at 607.

**8.** *Id.*

**9.** *Id.* at 607–08. We affirmed that determination. *Id.* at 611.

**10.** *Id.* at 613.

**11.** *Id.* at 609.

**12.** 20 AAC 05.1145.

**13.** 20 AAC 05.705.

**14.** Although Pasternak appears to have claimed five points for income dependence on his original application, for a total of forty-one points, he amended his application in December 1988 to claim fifteen points for income dependence for a total of fifty-one points.

**15.** At the time, CFEC had not yet ruled on Pasternak's request for reconsideration. On March 14, 2003, CFEC informed Pasternak that it "view[ed his] action in filing the Superior Court appeal as effectively withdrawing [his] request

perior court stayed the appeal pending the resolution of *Simpson.*[16] In November 2004 we issued our decision in *Simpson,* upholding CFEC's determination that seventy-three was the maximum and optimum number of permits for this fishery.[17] On January 24, 2006, the superior court affirmed CFEC's decision, reasoning that our decision in *Simpson* foreclosed Pasternak's arguments regarding the number of permits and finding that Pasternak failed to exhaust his administrative remedies to claim additional points for the 1983 season. Pasternak appeals.

## III. DISCUSSION

### A. Standard of Review

 When the superior court acts as an intermediate court of appeal, we independently review the merits of the administrative decision.[18] We have recognized four principal standards of review for administrative decisions: (1) the substantial evidence standard applies to questions of fact; (2) the reasonable basis standard applies to questions of law involving agency expertise; (3) the substitution of judgment standard applies to questions of law where no expertise is involved; and (4) the reasonable and not arbitrary standard applies to review of administrative regulations.[19] When reviewing an agency's interpretation of its own regulation, we apply the reasonable basis standard.[20] We defer to the agency unless its "interpretation is 'plainly erroneous and inconsistent with the regulation.' "[21]

### B. CFEC Did Not Err in Setting the Number of Permits for the Northern Southeast Inside Sablefish Longline Fishery.

#### 1. Maximum number of permits

As we explained in *Simpson,* AS 16.43.240(b) provides that CFEC shall limit participation in a fishery by establishing a maximum number of entry permits.[22] For a non-distressed fishery,[23] CFEC must set the maximum number of permits "at a level that is no lower than the highest number of units of gear fished in the four years prior to the limitation of the particular fishery."[24] CFEC limited participation in this fishery in 1985 and determined that 1984 was the year with the highest number of units of gear fished, with seventy-three.[25] CFEC adopted seventy-three as the maximum number for this fishery.[26]

 Pasternak claims that CFEC erred when it established the maximum number of permits in the fishery. He argues that CFEC "should increase the maximum number of permits by 10 permits or 5% as permitted." CFEC contends that it may exceed the maximum number of permits only where required to do so by law, which it maintains is not the case here. CFEC further argues that our decision in *Simpson* forecloses Pasternak's argument that the maximum number of permits should be increased based on conditions in the fishery. The superior court found that *Simpson* foreclosed Pasternak's

for reconsideration [and] ... therefore, intend[ed] to take no action on [the] request for reconsideration."

16. 101 P.3d 605.

17. *Id.* at 611, 613.

18. *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

19. *Id.*

20. *Simpson,* 101 P.3d at 609.

21. *Id.* (quoting *Lauth v. State,* 12 P.3d 181, 184 (Alaska 2000)).

22. *Id.* at 609–10.

23. The Northern Southeast Inside sablefish longline fishery is a non-distressed fishery. *See* 20 AAC 05.310(f)(1). We explained the difference between distressed and non-distressed fisheries in *Johns v. Commercial Fisheries Entry Commission:* "First, a [non-distressed] fishery ... may tolerate more units of gear than the historic high. In contrast, a distressed fishery, by definition, cannot.... Second, a distressed fishery is one which is overgeared as of January 1, 1973." 758 P.2d 1256, 1262 n. 6 (Alaska 1988).

24. *Simpson,* 101 P.3d at 609–10 (quoting *Johns,* 758 P.2d at 1262 n. 6).

25. *Id.* at 608; 20 AAC 05.310(f)(1); 20 AAC 05.320(e)(1); 20 AAC 05.330(j).

26. 20 AAC 05.320(e)(1).

arguments regarding the maximum number of permits for this fishery.

In *Simpson*, Steven Simpson appealed CFEC's denial of his application for a permit in the Northern Southeast Inside sablefish longline fishery—the same fishery at issue in this case.[27] Simpson challenged both the maximum and the optimum number of permits CFEC established for the fishery.[28] We applied a two-pronged test to CFEC's establishment of seventy-three as the maximum number of permits. First, we clarified that the maximum should be set "at a level that is no lower than the highest number of units of gear fished in *any one year* of the four years prior to the limitation of the particular fishery."[29] We held that seventy-three permits met this requirement.[30] Next we applied the requirement that CFEC must "meet the [Limited Entry] Act's two legislative purposes of 'enabling fishermen to receive adequate remuneration and conserving the fishery.'"[31] Noting that CFEC considered comments from the Alaska Department of Fish and Game that even seventy-three permits might be unsustainable for the fishery, we held that seventy-three permits also met the second prong of the test.[32] We rejected Simpson's argument that CFEC should increase the maximum number based on conditions in the fishery.[33] As a result, *Simpson* forecloses Pasternak's argument that CFEC should increase the maximum number.

■ We need not consider Pasternak's second argument regarding the maximum number, that seventy-four—not seventy-three—is the highest number of units of gear in the four years prior to the limitation of the fishery.[34] Although this argument is not foreclosed by *Simpson*,[35] Pasternak has not shown that he was prejudiced by CFEC's determination that seventy-three is the maximum number of permits. According to CFEC, it is "mathematically impossible for an applicant with 51 or fewer points to qualify" for a permit in the fishery. Nothing in the record suggests that Pasternak would have qualified for a permit if the maximum were seventy-four, and he has made no such argument to this court. Because we need not consider an argument without a showing of prejudice, we do not address his argument that the maximum number should be seventy-four.[36]

### 2. Optimum number of permits

In addition to the maximum number of permits, AS 16.43.290 requires CFEC to establish the optimum number of permits for each fishery. The optimum number is to be based upon a reasonable balance of several factors, including maintaining an economically healthy fishery and avoiding economic hardship.[37]

---

**27.** 101 P.3d at 608.

**28.** *Id.* at 610, 612.

**29.** *Id.* at 611 (emphasis added).

**30.** *Id.*

**31.** *Id.* (quoting *Johns*, 758 P.2d at 1263).

**32.** *Id.*

**33.** *Id.*

**34.** Pasternak maintains that CFEC incorrectly based the maximum number on the seventy-three *vessels* participating in 1984, when it should have based the maximum number on the seventy-four *participants* in 1984.

**35.** We did not address Simpson's argument that the highest number of units of gear was seventy-four, not seventy-three, because Simpson had waived the argument. 101 P.3d at 611.

**36.** *See, e.g., Younker v. Alaska Commercial Fisheries Entry Comm'n*, 598 P.2d 917, 920–21 (Alaska 1979) (holding that we would not consider an argument that preferential treatment of gear license holders discriminated against an applicant where he had not shown injury from that preference); *see also Johns*, 758 P.2d at 1262–63 (holding that error in setting a maximum number lower than the historic high did not require reversal where appellant was not prejudiced).

**37.** AS 16.43.290 provides:

Following the issuance of entry permits under AS 16.43.270, the commission shall establish the optimum number of entry permits for each fishery based upon a reasonable balance of the following general standards:

(1) the number of entry permits sufficient to maintain an economically health fishery that will result in a reasonable average rate of economic return to the fishermen participating in that fishery, considering time fished and necessary investments in vessels and gear;

■ In *Simpson*, we upheld CFEC's decision to set the optimum number as seventy-three for this fishery.[38] Despite noting that this court's decision in *Simpson* "precludes a good faith and responsible request of this Court to reverse [*Simpson's* ] holding regarding optimum numbers," Pasternak suggests that "incredibly positive changes in the fishery" justify an increase in the optimum number of permits.[39]

CFEC does not address the argument regarding optimum numbers directly but does argue that Pasternak's arguments regarding the number of permits are precluded by *Simpson*. In *Simpson*, we upheld CFEC's decision, noting evidence before CFEC that "the stock strength of the fishery was declining" and that the Alaska Department of Fish and Game "thought that even seventy-three permits would be too many."[40] Given *Simpson*, Pasternak's cursory challenge to CFEC's determination of the optimum number of permits for this fishery is without merit.

### C. CFEC Did Not Err when It Did Not Award Pasternak Past Participation Points Based on Extraordinary Circumstances.

■ CFEC awards applicants past participation points for each of the relevant years in which they participated in the fishery.[41] Pasternak maintains that CFEC erred by refusing to consider his claim for participating in 1983. CFEC responds that Pasternak failed to exhaust his administrative remedies and that he does not qualify for past participation points for 1983. We need not address CFEC's contention that Pasternak failed to exhaust his administrative remedies because—regardless of whether Pasternak exhausted his administrative remedies—he loses on the merits.

An award of past participation points for 1983 requires either a harvest of at least 2,000 pounds in that year[42] or a proof of extraordinary circumstances under 20 AAC 05.703(d). Because Pasternak did not participate in the fishery in 1983, he is not eligible for past participation points for 1983 unless he can show extraordinary circumstances. CFEC regulations provide:

> If extraordinary circumstances prevented an applicant from participating in the fishery in a given season, the commission will, in its discretion, award the applicant those points the applicant could reasonably have claimed but for the extraordinary circumstance. Extraordinary circumstances include temporary illness or disability, the loss of vessel or equipment through sinking, destruction, or extensive mechanical breakdown, and other similar objectively verifiable causes of non-participation. Extraordinary circumstances do not include, for example, voluntary or involuntary retirement from the fishery, permanent illness, permanent disability, or loss of the financial means to continue participation in the fishery.[43]

In a letter accompanying his permit application, Pasternak explained that he did not participate in 1983 because people told him his equipment was not strong enough for blackcod fishing. Pasternak's testimony during his 1989 hearing confirmed that he did not participate in 1983 because of the advice of others and his concerns about equipment. Pasternak's explanation does not fall within

---

(2) the number of entry permits necessary to harvest the allowable commercial take of the fishery resource during all years in an orderly, efficient manner, and consistent with sound fishery management techniques;

(3) the number of entry permits sufficient to avoid serious economic hardship to those currently engaged in the fishery, considering other economic opportunities reasonably available to them.

**38.** 101 P.3d at 613.

**39.** It is not clear whether Pasternak is appealing only the maximum number or both the maximum and the optimum number. His statement of issues identifies only the maximum number of permits as an issue. He suggests the optimum number should be increased, but his conclusions focus exclusively on the maximum number.

**40.** 101 P.3d at 613.

**41.** 20 AAC 05.705.

**42.** 20 AAC 05.705(a)(1).

**43.** 20 AAC 05.703(d).

the boundaries of "extraordinary circumstances" as defined by the regulation.

In *Cleaver v. State, Commercial Fisheries Entry Commission,* we upheld a hearing officer's determination that Cleaver had not demonstrated extraordinary circumstances.[44] Cleaver claimed past participation points for extraordinary circumstances in 1983. He attempted to fish but had problems with his anchors, a dangerous bait chute, difficulty reading his depth finder, and tangled gear.[45] We upheld the hearing officer's determination that Cleaver did not meet the three-part test for extraordinary circumstances that requires an applicant to show: (1) specific intent to participate; (2) extraordinary circumstances prevented participation; and (3) the applicant made all reasonably possible efforts to participate.[46] We noted that Cleaver's "lack of experience and appropriate equipment do not constitute extraordinary circumstances."[47] We also upheld the hearing officer's determination that Cleaver did not make all reasonably possible efforts to participate because he did not attempt to obtain a loan to remedy his mechanical problems.[48]

Pasternak's case for extraordinary circumstances is even less compelling. Unlike Cleaver, Pasternak makes no showing of specific intent to participate because he never even attempted to fish in 1983. Moreover, given that the significant mechanical difficul-

ties Cleaver encountered did not rise to the level of extraordinary circumstances, the advice Pasternak heeded certainly does not either. Finally, Pasternak does not show that he made all reasonably possible efforts to participate since he elected not to participate solely on the basis of advice from others. We therefore hold that CFEC did not err by declining to award Pasternak past participation points for 1983.

## IV. CONCLUSION

We AFFIRM the decision of the superior court upholding CFEC's decision. In *Simpson,* we upheld CFEC's determination that seventy-three was the maximum and optimum number of permits for this fishery. Because Pasternak can show no prejudice from CFEC's use of the number of vessels to determine the number of units of gear, we do not consider his claim that seventy-four should be the maximum number. Finally, Pasternak is not entitled to past participation points for 1983 because he did not show extraordinary circumstances.

---

**44.** 48 P.3d 464, 470 (Alaska 2002).

**45.** *Id.* at 466.

**46.** *Id.* at 468–70.

**47.** *Id.* at 469.

**48.** *Id.* at 469–70.