Dave BUTTON, Appellant,

v.

HAINES BOROUGH, Appellee.

No. S–12796.

Supreme Court of Alaska.

May 29, 2009.

---

Robert S. Spitzfaden, Gruening & Spitzfaden, APC, Juneau, for Appellant.

Robert P. Blasco, Hoffman Silver Gilman & Blasco, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

Based on two criminal convictions and complaints from customers and other tour operators, the clerk of the Haines Borough denied Dave Button's 2005 application for renewal of his commercial tour permit. Button appealed to the borough manager, who upheld the denial after conducting an eight-day evidentiary hearing. The borough assembly and the superior court affirmed. Button appeals. We hold that substantial evidence supported five of the manager's seven factual findings; that those five findings were sufficient to justify denial; that the borough did not violate Button's due process rights; and that the denial was not an inappropriately severe sanction. We therefore affirm the superior court order that affirmed the denial of Button's appeal.

## II. FACTS AND PROCEEDINGS

The Haines Borough regulates commercial tours, requiring that each operator acquire an annual commercial tour permit.[1] The permits automatically expire each March 1.[2] To renew a permit the operator must apply to the borough clerk.[3] An operator may appeal a renewal denial to the borough manager, the borough assembly, and the superior court.[4]

Dave Button operated commercial tours under permits from the Haines Borough for the 1999 through 2004 seasons. Based on the administrative record, the assembly later noted that the borough received more than eighty-five complaints concerning Button during this time.

When Button applied for renewal in 2004, the borough clerk, Julie Cozzi, was "reluctant[ ]" to renew the permit because of the complaints. She met with Button's wife, Jane Button. The clerk later testified that she admonished Jane at the meeting to "obey the rules and regs" for tour operators, and reviewed the Haines Borough Code (HBC) and the relevant regulations with Jane. The clerk noted the "admonishment" on Button's 2004 renewal application. Button later testified that he was aware of the complaints and this "admonishment." The clerk renewed Button's permit on May 12, 2004.

Between May and August 2004 the clerk learned of additional alleged and established misconduct by Button. He had been convicted of a misdemeanor; violated a borough ordinance; attempted to pressure a Chilkat Cruises fast ferry captain to overload the ferry; committed several violations of Coast Guard regulations involving his catamaran; and committed other violations of the HBC and the Haines Tour Operator Code of Conduct.

In June 2004 the clerk discussed with Button complaints regarding "parking and behavior" at the Port Chilkoot dock. On August 13 the borough's attorney notified Button that the borough was revoking his permit, effective September 15. Button appealed the notice, and the borough suspended the revocation process and allowed Button to operate through the 2004 tour season that ended September 26, 2004.

Per HBC 5.04.050.C, Button's 2004 permit expired on March 1, 2005. On March 9, 2005 the clerk informed Button that she intended

---

1. Haines Borough Code (HBC) 5.04, 5.18, & 5.18.015.

2. HBC 5.04.050.C.

3. *Id.*

4. HBC 5.04.090, 5.04.110.A, 5.04.110.D.

to deny any application for renewal. On May 1 Button submitted an application to renew his permit. The clerk denied Button's 2005 renewal application on May 19, citing HBC 5.04.070, .120(A)(1), (2), and (3), and .050(C). The clerk gave ten reasons for the denial, including the incidents mentioned above.

Button appealed the clerk's denial to the borough manager, Robert Venables, on June 3. The manager, acting as hearing officer per HBC 5.04.090 and .100, heard testimony over eight days between July 18 and December 7, 2005.[5] Button presented three witnesses and had the opportunity to cross-examine the borough's nine witnesses. The manager issued both an initial decision affirming the clerk's denial and a final decision containing detailed findings and conclusions.

Button appealed to the assembly, which held a hearing on May 18, 2006 and affirmed the denial on June 13, 2006. Button then appealed to the superior court, which affirmed the borough's denial on June 19, 2007.

Button appeals. He argues that the findings were unsupported by substantial evidence, and that any supported findings were insufficient to justify denial. He also contends that there were several due process violations, and that nonrenewal was too severe a sanction.

## III. DISCUSSION

### A. Standard of Review

■ When the superior court acts as an intermediate appellate court in an administrative matter, we independently review the merits of the administrative decision.[6] Most of the findings and conclusions to be reviewed were made by the manager. Several were made by the assembly.

■ When reviewing the merits of an agency decision, we apply varying standards of review.[7] The "reasonable basis" test applies to questions of law involving agency expertise, the "substitution of judgment" test applies to questions of law that do not involve agency expertise, and the "substantial evidence" test applies to questions of fact.[8] If the agency's factual findings are supported by substantial evidence, we will affirm the findings.[9] Whether evidence supporting a factual finding is substantial is a question of law that we review de novo.[10]

■ We review challenges to agency decisions to admit or exclude evidence for abuse of discretion, and will reverse only if the ruling "erroneously 'affected the substantial rights of a party.'"[11]

### B. Whether Those Findings Supported by Substantial Evidence Were Sufficient To Affirm Denial of Button's Renewal Permit

Button argues that seven of the manager's findings[12] were unsupported by substantial evidence and that, alternatively, they were insufficient to support denial of his renewal permit.

### 1. Whether substantial evidence supported the challenged findings

■ Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclu-

---

5. Two of the problems cited by the clerk as reasons for denying Button's permit were resolved prior to the manager's hearing.

6. *Lakloey, Inc. v. Univ. of Alaska,* 157 P.3d 1041, 1045 (Alaska 2007); *Gunter v. Kathy–O–Estates,* 87 P.3d 65, 68 (Alaska 2004).

7. *Lakloey,* 157 P.3d at 1045 (citing *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992)).

8. *Id.* at 1045; *Handley,* 838 P.2d at 1233.

9. *Morris v. State, Dep't of Admin., Div. of Motor Vehicles,* 186 P.3d 575, 577 (Alaska 2008).

10. *Leigh v. Seekins Ford,* 136 P.3d 214, 216 (Alaska 2006).

11. *Matanuska Elec. Ass'n, Inc. v. Municipality of Anchorage,* 184 P.3d 19, 23 (Alaska 2008) (quoting *Fleegel v. Estate of Boyles,* 61 P.3d 1267, 1270 (Alaska 2002)).

12. We review the manager's findings because the assembly generally did not make its own factual findings, but rather reviewed the manager's factual findings to determine whether they were supported by substantial evidence. For the one instance in which the assembly made its own factual finding, we review the assembly's finding.

sion."[13] We will not reweigh evidence or choose between competing inferences reasonably drawn from evidence.[14]

### a. The findings of Button's two criminal convictions

The manager found that Button was convicted in January 2004 of a misdemeanor in Skagway for improper use of evidence of vehicle registration or certificate of title,[15] and that Button was convicted in March 2003 of violating an HBC prohibition on soliciting on public property.[16]

Button argues that these findings were not supported by substantial evidence because the judgment and order relied upon by the manager were inadmissible hearsay that was not within any exception to the hearsay rule.

The Alaska Administrative Code does not require hearing officers at administrative hearings to follow the Alaska Rules of Evidence.[17] "The strict rules of evidence governing admissibility of hearsay in judicial proceedings do not apply to administrative hearings," and we will not reverse an administrative judgment based on hearsay unless the hearsay was inherently unreliable or jeopardized the fairness of the proceedings.[18] A hearing officer may reasonably rely on a certified copy of a record of conviction.[19] Button does not claim that the evidence of his convictions was unreliable, and we conclude that admitting the convictions into evidence did not jeopardize the fairness of the adversarial hearing.

Also, the convictions were properly relied upon under the manager's explanation that hearsay could be used only to "supplement or explain direct evidence." Button admitted to having been convicted of soliciting for tours in Haines, and to committing the conduct underlying the Skagway conviction. Button's own admissions provided substantial direct evidence to support the findings, even absent consideration of the hearsay evidence.

### b. The findings relating to the operation of Button's catamaran

Two of the manager's factual findings and one finding made in the first instance by the assembly concerned operation of Button's catamaran during the summer of 2004: (1) on one occasion, Button asked a customer to drive Button's catamaran and pose as a potential buyer to circumvent Coast Guard safety regulations; (2) in August "[Chilkat Cruises fast ferry Captain Mark] Mitcheltree witnessed Button captaining his ocean tour with an overloaded boat"; and (3) Button admitted that "on numerous occasions" he used a customer as a crew member to overload his catamaran and circumvent Coast Guard safety regulations.

Button argues that all three findings were unsupported by substantial evidence.

Button argues that the first finding was unsupported by substantial evidence because the manager relied on inadmissible hearsay, a letter from the customer, Daniel Downing.

Downing's letter was properly considered because hearsay is admissible at administrative hearings [20] and because it served to supplement or explain direct evidence. Downing's letter stated that on the morning of a trip he had booked with Button, Down-

**13.** *South Anchorage Concerned Coalition, Inc. v. Municipality of Anchorage Bd. of Adjustment,* 172 P.3d 774, 780 (Alaska 2007) (citing *Leigh,* 136 P.3d at 216).

**14.** *Conkey v. State, Dep't of Admin., Div. of Motor Vehicles,* 113 P.3d 1235, 1237 (Alaska 2005) (citing *Wilson v. Erickson,* 477 P.2d 998, 999 & n. 1 (Alaska 1970)).

**15.** AS 28.10.481.

**16.** HBC 05.08.010.A.

**17.** 3 Alaska Administrative Code (AAC) 48.154(a).

**18.** *Racine v. State, Dep't of Transp. & Pub. Facilities,* 663 P.2d 555, 557 (Alaska 1983) (holding that because evidence of judgment of conviction was not inherently unreliable and did not deprive appellant of fair hearing, admission did not require reversal of agency decision).

**19.** *Sather v. State, Div. of Motor Vehicles, Dep't of Pub. Safety,* 776 P.2d 1055, 1057 (Alaska 1989) (holding that reliance on certified copy of California conviction was proper in license revocation hearing).

**20.** 3 AAC 48.154(a); *Racine,* 663 P.2d at 557.

ing was told by Button that he did not have a captain for the trip and was asked by Button to run the boat, taking two other clients along with him. The letter further stated that Button told Downing that if he "ran the boat under the idea that [he] was 'test driving it as a prospective buyer' then [Button] could go around the Coast Guard since they watch him so closely." Downing declined. Button admitted at the hearing that he had asked Downing if he wanted to captain the boat and that Downing had declined. Button did not deny at the hearing Downing's allegation Button told Downing to pose as a potential buyer to circumvent Coast Guard regulations that require the boat to be captained by a licensed operator [21] and that limit the number of passengers.[22] Downing's letter served to supplement and explain Button's own admissions and was therefore properly considered. Together, Button's testimony and the letter are substantial evidence supporting the finding that Button asked Downing to pose as a potential buyer in order to circumvent Coast Guard safety regulations.

▮▮▮ Button argues that the second finding was unsupported by substantial evidence because he contends that he was not captaining the boat and that the boat was not overloaded.

Substantial evidence did not support the findings of overloading. There was some evidence permitting the manager to find that Button was captaining the boat.[23] But there was no evidence the boat was overloaded on that occasion. There was instead evidence Button had five passengers on board that day.[24] This evidence established that Button's boat was not overloaded,[25] and there was no contrary evidence. The finding that

Button captained an overloaded boat was therefore unsupported by substantial evidence.

▮▮▮ It appears that the "numerous occasions" component of the third finding was made by the assembly independent of the manager's findings of fact. We review the assembly's finding applying the same substantial evidence standard that we apply to the manager's findings.

Button argues that because he admitted to using a passenger as a crew member "one time only," the assembly's finding that he admitted he did so on "numerous occasions" was not supported by substantial evidence.

Button did admit at the hearing that he had asked a passenger to pose as a crew member on one occasion, in order to circumvent Coast Guard regulations. The manager's finding that Button "used a passenger as 'crew' so he could overload his boat" was therefore supported by substantial evidence. But there was no evidence Button admitted to doing so on more than one occasion. Substantial evidence therefore did not support the "numerous occasions" part of the third finding.

### c. The remaining findings

The manager made two additional findings: (1) in June 2004 Button pressured Captain Mitcheltree to exceed the capacity of Captain Mitcheltree's fast ferry in order to transport some of Button's passengers; and (2) Button admitted he stopped in the middle of a public roadway and impeded the flow of traffic, in violation of the Haines Tour Operator Code of Conduct.

---

**21.** Coast Guard regulations require that every passenger vessel be "under the direction and control of an individual holding a license as an operator." 46 C.F.R. § 15.605 (2008); *see also* 46 U.S.C. § 8903 (2006); 46 C.F.R. § 24.05–1 (2008).

**22.** Coast Guard regulations authorize operation of the catamaran with a licensed captain, crew, and up to six passengers. 46 U.S.C. § 8903; 46 C.F.R. § 15.605; 46 C.F.R. § 24.05–1.

**23.** This evidence was not undisputed. Captain Mitcheltree testified that although he saw Button steering the boat, he did not know whether there

was a licensed captain on board. A customer stated that there was a captain on board and that Button was the skipper, and Button testified that he hired captains but sometimes steered with a captain on board to fulfill the hours requirement to get his captain's license.

**24.** In his letter to the borough, Captain Mitcheltree wrote that he "witnessed Dave Button captaining his catamaran [b]oat out of the ... harbor with 5 passengers on [b]oard."

**25.** *See* 46 U.S.C. § 8903; 46 C.F.R. § 15.605; 46 C.F.R. § 24.05–1.

■ Button argues that the first finding was not supported by substantial evidence because the evidence was as consistent with an inference that he merely "appealed" to Captain Mitcheltree or "reasonably requested boarding," as it was with an inference that he "pressured" Captain Mitcheltree.

The evidence was undisputed that in June 2004 Button attempted to secure passage for several of his tour customers on Captain Mitcheltree's ferry, but was unable to get all of them on board because the ferry was full. Captain Mitcheltree testified that Button "put a couple of little girls in front of me and was like these two little girls don't take up much room . . . why can't you take a couple of little kids." Captain Mitcheltree described this as a "pressure situation" in which Button was trying to make him "feel like the bad guy." Button admitted at the hearing that it "[c]ould've happened." This was substantial evidence from which the manager could have concluded that Button "pressured" Captain Mitcheltree, and could have rejected Button's characterization that he "reasonably requested boarding." We will not reweigh the evidence or choose between competing inferences reasonably drawn from the evidence.[26]

■ Button next argues that the public roadway finding was not supported by substantial evidence because much of the evidence the manager relied on was inadmissible hearsay.

The record contains several complaints that Button stopped in the middle of the road. The clerk testified that she received these complaints. Button admitted at the hearing that he stopped "two or three" times "in" or "on" the road "to pick people up or let people off."

The hearsay evidence supporting this finding was not unreliable.[27] The manager therefore properly considered the complaints and the clerk's testimony to explain or supplement Button's own admissions. That evidence was substantial evidence supporting the finding that Button stopped in the middle of the road.

### 2. Whether the supported findings were sufficient to justify nonrenewal

■ Whether the findings were sufficient to justify denial is a question of law involving agency expertise. We therefore apply the reasonable basis test,[28] under which we defer to the agency unless its interpretation is "plainly erroneous and inconsistent with the regulation."[29] The borough has a significant interest in ensuring the safety of local tour operators, and it may interpret its code to achieve that purpose, provided there is a reasonable basis for the interpretation.

Button argues that the manager's findings were insufficient to support denial of his renewal application.

■ Button argues that the criminal convictions were insufficient to support nonrenewal for four reasons. First, he argues that the version of the HBC in effect when his permit was denied did not permit nonrenewal on the basis of violations of applicable law. The borough responds that the pre-amendment HBC impliedly permitted nonrenewal on the basis of violations of applicable law.

The March 2005 HBC amendments explicitly authorize nonrenewal if grounds exist for denial, revocation, or suspension of a permit.[30] Pre-amendment, the HBC stated that

26. *Conkey v. State, Dep't of Admin., Div. of Motor Vehicles,* 113 P.3d 1235, 1237 (Alaska 2005) (citing *Wilson v. Erickson,* 477 P.2d 998, 999 (Alaska 1970)); *see also Morris v. State, Dep't of Admin., Div. of Motor Vehicles,* 186 P.3d 575, 577 (Alaska 2008); *Anderson v. State, Dep't of Revenue,* 26 P.3d 1106, 1109 (Alaska 2001).

27. 3 AAC 48.154(a); *Racine v. State, Dep't of Transp. & Pub. Facilities,* 663 P.2d 555, 557 (Alaska 1983).

28. *Lakloey, Inc. v. Univ. of Alaska,* 157 P.3d 1041, 1045 (Alaska 2007); *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

29. *Pasternak v. State, Commercial Fisheries Entry Comm'n,* 166 P.3d 904, 907 (Alaska 2007) (quoting *Simpson v. State, Commercial Fisheries Entry Comm'n,* 101 P.3d 605, 609 (Alaska 2004) (internal quotation marks omitted)); *see also Lazy Mountain Land Club v. Matanuska–Susitna Borough Bd. of Adjustment & Appeals,* 904 P.2d 373, 385 & n. 68 (Alaska 1995).

30. HBC 5.04.050.C now reads in relevant part: "The review standards and procedures that apply to an initial permit application shall apply to applications for the renewal of a permit.... A permit shall not be renewed if the clerk deter-

permits would be renewed "in accordance with chapter[s] 5.04 and [5.18]"[31] but did not specify which provisions applied to renewals. Former chapter 5.04 stated that violation of any "applicable local, state, or federal law or regulation" was grounds for denial, revocation, or suspension of a permit.[32] But former chapters 5.04 and 5.18 did not specify that violation of an applicable law was also ground for nonrenewal.

 The borough appears to have interpreted both the pre-and post-amendment versions of the code to allow nonrenewal based on violations of applicable law. That interpretation was not plainly erroneous or inconsistent with the text of the HBC provisions.[33] We hold that the pre-amendment HBC permitted nonrenewal for violations of applicable law.

Second, Button argues that the assembly's reliance on an HBC amendment impermissibly applied the amendment retroactively. The borough responds that the amendment was clarifying or curative and therefore could be applied retroactively. Because the pre-amendment code permitted nonrenewal for violations of applicable law, it is unnecessary to determine whether the amended version applied retroactively.

 Third, Button argues that the conduct underlying the convictions was unrelated to his Haines commercial tour permit because the Skagway conviction occurred outside the Haines Borough several years before nonrenewal and because the Haines conviction involved offering free rides, not tours for a fee. The borough responds that the Skagway conviction was for a violation of "applicable law" because, although the violation occurred outside of the Haines Borough, it was directly related to Button's tour operations, and the plain language of the HBC is not limited to violations of Haines ordinances. The borough argues that the Haines conviction is self-evidently applicable.

The HBC does not define the phrase "applicable law."[34] The phrase is therefore susceptible to a range of permissible definitions. Webster's Third New International Dictionary defines "applicable" as "having relevance," or "fit, suitable, or right to be applied."[35] We hold that, at minimum, to be "applicable" a law must be relevant to the subject of the permit.

The borough defines "applicable law" as any law that is "fit, suitable, pertinent, and appropriate." Button argues for a narrower definition, encompassing only violations occurring within the borough and involving paid tours within the borough.

We apply the reasonable basis standard in deciding whether the meaning the borough attributes to "applicable law" is correct.[36] We will defer to the borough's interpretation unless it is "plainly erroneous and inconsis-

---

mines that grounds exist for the suspension or revocation of the applicant's expiring permit."
HBC 5.18.060 now reads in relevant part: "The review standards that apply to initial permit applications shall apply to applications for the renewal of a permit. . . ."

**31.** Former HBC 5.18.060.

**32.** Former HBC 5.04.070, 5.04.120.

**33.** *See Pasternak,* 166 P.3d at 907; *Simpson v. State, Commercial Fisheries Entry Comm'n,* 101 P.3d 605, 609 (Alaska 2004); *Lazy Mountain Land Club,* 904 P.2d at 385 & n. 68.
When interpreting statutes in which "one section deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible." *Matter of Estate of Hutchinson,* 577 P.2d 1074, 1075 (Alaska 1978). In this case there is no conflict, and a harmonized read-

ing applies all pertinent HBC 5.04 and 5.18 provisions to renewal applications.
Furthermore, allowing nonrenewal based on violations of applicable law is "more in line with reason, practicality, and common sense" because it "avoids [the] absurd result[ ]" of allowing mid-season revocation based on violation of an applicable law but disallowing the less severe consequence of nonrenewal. *Wilson v. State,* 127 P.3d 826, 833 (Alaska 2006) (quoting *Grimm v. Wagoner,* 77 P.3d 423, 427 (Alaska 2003) (internal quotation marks omitted)).

**34.** HBC 5.04 & 5.18.

**35.** Webster's Third New International Dictionary 105 (1993).

**36.** *Lakloey, Inc. v. Univ. of Alaska,* 157 P.3d 1041, 1045 (Alaska 2007); *Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992).

tent with the regulation."[37] Because the borough's definition of "applicable law" falls within the permissible range of definitions, and because the broader definition advanced by the borough promotes its interest in ensuring the safety of its citizens and tourists, we hold that a violation is of "applicable law" if the violated law is relevant to the subject matter of the permit.

Both convictions were directly relevant to Button's tour operations in Haines. Both involved misuse of Button's tour vehicles, and the Haines conviction involved Button giving free rides in an attempt to solicit customers for his tours. We hold that the borough permissibly concluded that these two convictions were relevant to Button's Haines tour operations and therefore were violations of "applicable law."

■ Finally, Button argues that the borough should be estopped from basing denial of his 2005 permit on events that occurred before the borough renewed his permit in 2004. The borough responds that the doctrines of estoppel and quasi-estoppel are inapplicable because the clerk was unaware of the convictions when she granted the 2004 permit, and because Button fails to satisfy the elements for these doctrines.

■ "Courts may apply the doctrine of equitable estoppel against the state."[38] Although we have "rarely" held that estoppel "bar[red] the state's exercise of its sovereign police powers," we nevertheless apply the estoppel test in each case.[39]

To make out a claim of estoppel against the government, Button must show that (1) the borough asserted a position by conduct or words; (2) Button acted in reasonable reliance on that assertion; (3) Button suf-

fered resulting prejudice; and (4) estopping the borough from acting against Button's permit serves the interest of justice so as to limit public injury.[40] Button fails to demonstrate that the borough asserted any position regarding the convictions simply by declining to exercise its discretion to deny Button's 2004 permit application.[41] It is therefore unnecessary to consider the other three components of the four-part test for estopping the government.[42]

■ Button also fails to meet the test for quasi-estoppel. That doctrine applies when facts and circumstances make assertion of an inconsistent position unconscionable.[43] In evaluating quasi-estoppel claims, we have considered: (1) "whether the party asserting the inconsistent position has gained an advantage or produced some disadvantage through the first position;" (2) "the magnitude of the inconsistency;" (3) "whether changed circumstances tend to justify the inconsistency;" (4) "whether the inconsistency was relied on by the party claiming estoppel to his detriment;" and (5) "whether the first assertion was made with full knowledge of the facts."[44]

The relevant factors militate against finding quasi-estoppel in this case.[45] First, the borough did not gain an advantage or produce a disadvantage by renewing Button's tour permit in 2004; the borough did not benefit from granting Button's 2004 permit, and Button was no more disadvantaged by the 2005 nonrenewal than he would have been had the clerk declined to renew his permit in 2004. Second, the first assertion was made without full knowledge of all the facts, specifically the Skagway conviction and other complaints. The assertions were

---

37. *Pasternak,* 166 P.3d at 907; *see also Lazy Mountain Land Club,* 904 P.2d at 385 & n. 68.

38. *State, Dep't of Commerce & Econ. Dev., Div. of Ins. v. Schnell,* 8 P.3d 351, 355 (Alaska 2000).

39. *Id.* at 355–56.

40. *See id.* at 356 (citing *Wassink v. Hawkins,* 763 P.2d 971, 975 (Alaska 1988)).

41. HBC 5.04.070.A, 5.04.120.A, 5.18.060.

42. *See Schnell,* 8 P.3d at 356.

43. *Merdes v. Underwood,* 742 P.2d 245, 248 (Alaska 1987).

44. *John's Heating Serv. v. Lamb,* 46 P.3d 1024, 1040 (Alaska 2002); *Merdes,* 742 P.2d at 248–49.

45. *John's Heating Serv.,* 46 P.3d at 1040 (holding that quasi-estoppel did not apply because party asserting inconsistent position gained no advantage, other party did not rely on assertion, and first assertion was made without full knowledge of facts).

therefore arguably not inconsistent with one another, so the magnitude of inconsistency cannot be considered great. Third, changed circumstances—namely the clerk's awareness of the Skagway conviction and additional complaints—justify any inconsistency. And although Button contends that he relied on the 2004 renewal because he did not seek employment or make alternative plans, his claim is unsupported by citations to the record, and the fact that he went to work for his wife's tour brokerage business belies his contention. Finally, any reliance would have been unreasonable because Button stated that when he received the borough's August 31, 2004 letter suspending the revocation process for his 2004 permit, he "knew that [he was] going to have a problem getting a renewal of [the] permit."

■ We therefore hold that the borough is not estopped from relying on events that occurred before May 12, 2004, when the borough issued Button's 2004 renewal permit.[46]

■ Button further argues that because the remaining supported findings did not concern violations of applicable law, and because the HBC does not explicitly provide for nonrenewal on any basis other than violations of applicable law, the remaining supported findings cannot provide a sufficient basis for nonrenewal.

A renewal application may be denied for "[s]ubstantial noncompliance with any term, condition, or provision of the permit."[47] Applicants must sign the Haines Tour Operator Code of Conduct, promising to abide by its provisions.[48] Those provisions include promises "[t]o conduct our operations with respect for and consideration of the other users of the public lands and rights-of-way upon which we operate" and "[t]o not impede the

flow of traffic, unreasonably," including "not stopping in the roadway." Button signed the code of conduct as part of his 2004 renewal application.

We hold that abiding by the code of conduct is a "term, condition, or provision of the permit"; therefore substantial noncompliance with the code of conduct is a permissible basis for nonrenewal.[49] Button's conduct in pressuring Captain Mitcheltree was substantial noncompliance with the code of conduct provision regarding respect and consideration of others, and stopping in the roadway was substantial noncompliance with the code of conduct provision regarding not unreasonably impeding traffic.[50] The borough was therefore entitled to rely on those incidents in deciding whether to grant the 2005 renewal application.

■ With respect to the Downing incident, HBC 5.04.120.A.5 authorizes nonrenewal for "reasons affecting the public safety or welfare." Because allowing a nonlicensed individual with unknown credentials to captain a boat for the purpose of allowing the permit holder to exceed the maximum number of passengers on board affects the public safety and welfare, the Downing incident was properly considered as a basis for nonrenewal.

■ We consider the findings in the aggregate, not individually,[51] and hold, even though substantial evidence did not support the other two findings, that the five supported findings—about the two criminal convictions, pressuring Captain Mitcheltree, stopping in the middle of the road, and the Downing incident—are sufficient to support denial of Button's renewal application.

Additionally, the assembly stated that "the convictions, standing alone, are ample reason

---

**46.** Whether estoppel applies is a question of law not involving agency expertise; we therefore apply our independent judgment. *Schnell,* 8 P.3d at 355.

**47.** See HBC 5.04.120.A.1. The amended HBC authorizes nonrenewal if "grounds exist for the suspension or revocation of the applicant's expiring permit," HBC 5.04.050.C, and the borough appears to have interpreted the pre-amendment HBC to allow nonrenewal on any basis that would justify revocation or suspension.

**48.** HBC 5.18.030.C.6.

**49.** HBC 5.04.120.A.1.

**50.** *Id.*

**51.** *Yahara v. Construction & Rigging, Inc.,* 851 P.2d 69, 72 (Alaska 1993) ("Substantial evidence is that which a reasonable mind, viewing the record as a whole, might accept as adequate to support the Board's decision.").

to affirm the clerk's action." And the manager stated that Button's admitted use of a passenger as a crew member "is one egregious example of [Button's] disregard of proper conduct and the law, and by itself constitutes a reasonable basis for not renewing the [p]ermit." This persuades us that the assembly would affirm nonrenewal even absent the two unsupported factual findings. A remand is therefore unnecessary.

## C. Whether Button Was Denied Due Process

Button raises several theories to support his claim that the borough, the clerk, and the assembly violated his due process rights.[52]

■ As a threshold matter, a permit applicant is entitled to due process of law in evaluation of the permit application.[53] Button's interest in obtaining a 2005 commercial tour permit was therefore protected by due process. He had a property interest in the renewal process.

Button first argues that the HBC lacks sufficient standards for exercise of the clerk's discretion and the assembly's review of the manager's factual findings. We have held that "[t]he adequacy of process does not depend on the advance adoption of standards. Rather, we must look to the entire set of safeguards provided in the particular proceeding."[54] In this case the entire set of safeguards, including the manager's lengthy adversarial hearing in which Button actively participated, sufficiently protected Button's due process rights.

■ Second, Button argues that the borough's procedures were insufficient because the clerk denied the permit without notifying Button of the "charges against him" or allowing him to "defend himself"; "conducted no investigation before denying the permit"; "had no personal knowledge" of the events she relied on to deny the permit; "held no hearing prior to denial"; did not allow Button to respond before deciding to deny renewal; decided not to renew Button's permit a month or two before she notified Button of her intent not to renew; and denied renewal without seeking "contrary information."

The clerk notified Button that she intended to deny his renewal application in March 2005 but invited him to submit his application anyway so he could appeal the decision if he so chose. After Button submitted his application, the clerk sent him a detailed notice of denial enumerating the ten grounds on which it was based. The denial also informed him that he had the right to appeal her decision. Button had ample notice and opportunity to defend himself at the manager's hearing. The clerk's nonrenewal procedure therefore did not deny Button due process.[55]

---

52. Button argues that the borough, the clerk, and the assembly's actions violated his rights under the due process clauses of both the United States Constitution and the Alaska Constitution. See U.S. Const. amend XIV; Alaska Const., art. I, § 7.

53. Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd., 991 P.2d 202, 211 (Alaska 1999) (holding that liquor license renewal applicant had protected property right); Hilbers v. Municipality of Anchorage, 611 P.2d 31, 36 (Alaska 1980) (holding that initial issuance of business license is protected); see also Bartlett v. State Commercial Fisheries Entry Comm'n, 948 P.2d 987, 990 (Alaska 1997) ("An individual's interest in an application for a limited entry fishing permit is entitled to due process."); Javed v. Dep't of Pub. Safety, 921 P.2d 620, 622 (Alaska 1996) ("A driver's license represents an important property interest which is protected under the due process clause of the Alaska Constitution."); Herscher v. State, Dep't of Commerce, 568 P.2d 996, 1002 (Alaska 1977) (holding that property interest in hunting guide license warrants due process protection).

54. Amerada Hess Pipeline Corp. v. Alaska Pub. Utils. Comm'n, 711 P.2d 1170, 1178 (Alaska 1986) (holding that despite vague statute and complete lack of regulations interpreting it, party was provided constitutionally sufficient notice of nearly two million dollars in costs and attorney's fees assessed against it); see also Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation, 145 P.3d 561, 570–71 (Alaska 2006) (holding that administrative regulation provided constitutionally sufficient notice of cost-shifting policy, even though policy was not explicit and party alleged that if it had known it would have litigated differently).

55. See Rollins, 991 P.2d at 211 (holding that procedure allowing denial of liquor license renewal without hearing was sufficient, provided that board gave denied applicant notice for denial, stating reasons for denial and informing applicant of procedure for appeal). The borough's procedure in this case was substantially similar to that followed in Rollins.

Finally, Button argues that the manager should have granted Button's request that the manager disqualify himself as hearing officer. Although Button does not argue that the manager was actually biased, Button argues that the manager should have disqualified himself because he had "advance knowledge of [the borough's] side of the case," raising a reasonable question about the manager's impartiality, and because he "cannot be both a witness and the hearing officer."

Before becoming borough manager, Venables was a borough employee who received, recorded, and placed in Button's file two telephonic complaints regarding Button being stopped in the middle of the road. Also before becoming manager, Venables was present during a meeting between a citizen and the clerk, in which the citizen complained that Button was soliciting, trespassing, "hawking" on Chilkat Cruises property, "pulling people off the dock," and stopping his bus in the middle of the road. After becoming manager and after the clerk denied the 2005 permit, but before the manager conducted the hearing, Venables had a conversation with the clerk in which she informed him of the nonrenewal but did not discuss her substantive reasons for denial with him.

Although Button moved several times during the hearing to disqualify the manager and suggested that the borough might wish to call the manager as a witness, he did not call the manager as a witness or ask the borough to do so, and the borough stated that it did not intend to call the manager as a witness. On appeal to the assembly, Button argued that the manager should have been disqualified as hearing officer, but he did not request a de novo hearing or ask that the manager be called to testify before the assembly.

Button did not argue before the assembly, and does not now argue, that the manager was actually biased, that the manager's fact-finding was skewed, or that the manager's alleged appearance of impartiality affected the outcome of the hearing. Although he requests a hearing de novo in front of this court, he does not ask to examine the manager at that hearing.

In *AT & T Alascom v. Orchitt*, we held: Administrative agency personnel are presumed to be honest and impartial until a party shows actual bias or prejudgment. To show hearing officer bias, a party must show that the hearing officer had a predisposition to find against a party or that the hearing officer interfered with the orderly presentation of the evidence.[56]

The four incidents listed above are too minor to show actual bias or the appearance of bias. Venables was not borough manager when he received the two complaints and sat in on the meeting; and because he was not then in an adjudicative position, it was appropriate for him to receive the information. The manager's factual finding regarding Button being stopped in the roadway was supported by at least three additional complaints with which the manager was not involved. Button forfeited any right he may have had to examine the manager on the issue of bias when he failed to ask for the opportunity to examine the manager in front of the assembly. Because the available evidence is insufficient to establish actual bias or appearance of bias, and because any request to examine the manager is foreclosed, Button has failed to demonstrate actual bias or appearance of bias.

We hold that Button has not demonstrated any reason requiring the manager to disqualify himself. We reach that conclusion because Button did not demonstrate actual bias or appearance of bias, because the four incidents in which Venables was minimally in-

56. *AT & T Alascom v. Orchitt*, 161 P.3d 1232, 1246 (Alaska 2007) (holding that hearing officer's position as vice president of workers' union was not sufficient to demonstrate actual or probable bias); *see also Bruner v. Petersen*, 944 P.2d 43, 49 (Alaska 1997) (holding that dean of nursing program's "close and supportive working relationship" with members of committee whose decision dean was reviewing was insufficient to demonstrate actual or probable bias (internal quotation marks omitted)); *Tachick Freight Lines v. Dep't of Labor*, 773 P.2d 451, 453 (Alaska 1989) (holding that hearing officer's "pointed questioning" of party was insufficient to demonstrate bias).

volved are too insignificant to reasonably call into question the manager's impartiality, and because Button failed to ask that the manager be called to testify before the assembly.

Additionally, the manager issued a detailed decision explaining his reasons for upholding the clerk's denial, and his decision has been subjected to review by the assembly and to appellate review by the superior court and this court.[57] The borough's procedures therefore contain sufficient institutional safeguards against untrammeled administrative discretion such that any merger of investigative, executive, and adjudicative functions did not require the manager to disqualify himself.[58] We conclude that Button's due process rights were not violated.

### D. Whether Nonrenewal Is Too Severe a Sanction

 Button argues that the sanction the borough imposed was too severe, because nonrenewal was a "vast overreaction" to "relatively minor events."

The borough has a strong interest in ensuring the safety of its citizens and visitors. Some events taken in isolation could be considered "relatively minor," but taken in the aggregate, the supported findings demonstrate pervasive lack of concern for public safety. As discussed above, the manager described Button overloading his catamaran as "egregious" and stated that "by itself [the overloading incident] constitutes a reasonable basis for not renewing the [p]ermit."

We therefore hold that the sanction was not inappropriately severe. The manager and assembly were better suited than we to determine the best interest of the Haines community. They had a reasonable basis for concluding that nonrenewal was necessary, given that lesser prior measures—the admonishment and the suspended revocation proceeding in 2004—appear to have been ineffective.

### IV. CONCLUSION

The superior court's order affirming denial of Button's administrative appeal is AFFIRMED.

MATTHEWS, Justice, not participating.

---

**57.** Button requests a trial de novo. Because Button's due process rights were not violated, he is not entitled to trial de novo.

**58.** *Amerada Hess*, 711 P.2d at 1180 (holding that agency's dual role as administrator and adjudicator did not violate due process because agency issued reasoned decision that was subject to judicial review); *see also Amerada Hess Pipeline Corp. v. Regulatory Comm'n of Alaska*, 176 P.3d 667, 675 (Alaska 2008) (holding that "mere exposure" to evidence prior to adversary hearing does not "in itself ... impugn the fairness" of later hearing) (quoting *Withrow v. Larkin*, 421 U.S. 35, 55, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975)); *AT & T Alascom*, 161 P.3d at 1246 (stating that party must show "actual bias or prejudgment" to refute presumption of honesty and impartiality of agency personnel).